## INSURANCE COMPANY OF NORTH AMERICA *v.* DARREL D. AUFENKAMP

[No. 154, September Term, 1980.]

*Decided October 14, 1981.*

**496**

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Wade J. Gallagher,* with whom were *Galiher, Clarke, Martell & Donnelly* on the brief, for appellant.

*Millard S. Bennett,* with whom were *Donald N. Sperling* and *Helfand, Stein, Sperling & Bennett, P.A.* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. ELDRIDGE and DAVIDSON, JJ., concur in the result. ELDRIDGE, J., filed a concurring opinion at page 516 *infra,* in which DAVIDSON, J., concurs.

On April 10, 1977, Easter Sunday, Melva J. Aufenkamp died from injuries sustained in a fall from the second story bedroom window of the apartment in Silver Spring, Maryland, where she resided with her spouse and son. The husband, appellee Darrel D. Aufenkamp, submitted proof of loss and made a claim for proceeds under an insurance policy issued by the Insurance Company of North America, the appellant here, and upon the refusal of INA to discharge the benefits provided by the policy, this action *in assumpsit* was instituted by the named beneficiary husband in the Circuit Court for Montgomery County to enforce that contract.

The "personal accident and special hazards insurance," as it is titled, was issued by INA in the summer of 1970, and provides for the payment of specified benefits upon a loss suffered as a result of a "covered occurrence" which, as pertinent to this case, is defined in the policy as "bodily injury [suffered by the appellee, Mrs. Aufenkamp or their children] resulting directly and independently of all other causes from an accident . . ." (here referred to as the coverage clause). The benefits payable to the husband as the primary beneficiary in the event of a covered occurrence are keyed to the nature of the loss, which include loss of life, dismemberment and disability. In its declination to pay any moneys under the policy, INA, relying upon investigations

conducted by both the medical examiner and the police as well as medical history of the insured, asserted that the appellee was "ineligible for accidental death benefits" because the demise of his wife resulted from an intentional, self-inflicted injury which was not a risk assumed under the insurance contract. The company's position was founded upon the following provision of the policy which in this opinion we refer to as the suicide exclusion clause:

> Except as specifically provided for, the policy does not cover loss caused by or resulting, directly or indirectly, wholly or partially, from any one or more of the following:
>
> > A. Intentionally self-inflicted injuries, suicide or any attempt thereat, while sane or insane. . . .

After the case was put at issue by the insurer's plea, the parties engaged in pre-trial discovery procedures by appellee's request for admissions from, and his submission of interrogatories to, INA. When appellee demanded an admission that "on or about July 27, 1970, Darrel D. Aufenkamp submitted an application for life insurance to Insurance Company of North America which would cover himself and his wife Melva J. Aufenkamp," the insurer answered, "admitted." Likewise, in response to interrogatories as to whether application had been made "for a policy of life insurance," whether the appellant "issue[d] a policy of life insurance to Melva J. Aufenkamp . . .," and whether, if issued, "the said life insurance policy was in full force and effect at the time [the wife] died," the insurance company answered each query in the affirmative. Armed with these acknowledgements, the beneficiary moved for summary judgment, urging at the outset that "the sole issue raised by the [appellant] is whether or not an exclusion from the policy, which bars payment in the event of suicide, bars the [appellee] from recovering." Mr. Aufenkamp then reasoned the suicide exclusion provision of the policy was rendered unenforceable (and thus that coverage existed) by

section 410(a)(5) of Article 48A, which he contended was made applicable to this policy by virtue of INA's concessions that this was a life insurance contract. This enactment provides:

> (a) No policy of life insurance shall be delivered or issued for delivery in this State if it contains a provision which excludes or restricts liability for death caused in a certain specified manner or occurring while the insured has a specified status, except that such a policy may contain provisions excluding or restricting coverage as specified therein in the event of death under any one or more of the following circumstances:
>
> * * *
>
> (5) Death within two (2) years from the date of issue of the policy as a result of suicide, while sane or insane. [Code (1957, 1979 Repl. Vol.), Art. 48A, § 410(a)(5).[1]]

INA countered in its opposition to the motion for summary judgment that the policy issued by it was "a personal accident and special hazards insurance," and therefore not governed by § 410 which, by its terms, is limited in application to life insurance. An order granting summary judgment in favor of the beneficiary was signed by the trial judge, who reasoned, as he later verbalized in denying INA's motion for reconsideration, that the suicide exclusion clause was void by virtue of section 410 on either of two grounds: (i) that the insurance company had admitted these policies constituted life insurance, and (ii) that, "Article 48A ... demonstrates as a matter of law that a life insurance policy is here involved...." A timely appeal was noted to the Court of Special Appeals from the entry of the summary judgment, which ruling INA claims was based on answers to discovery requests that were nothing less than "a beartrap under the

---

1. It is conceded by INA that the policy had been in effect for more than two years at the time of the wife's death.

leaves." This Court issued its writ of certiorari prior to the intermediate appellate court's consideration of the matter.

In our view, the summary judgment entered by the circuit court can be supported neither by the theory that INA made a binding concession that the insurance policy here involved is one of life insurance, nor by the finding that the policy is made so as a matter of law by statutory definition. As for the former, we are not the first to recognize that the term "life insurance," in general usage, does not enjoy a well delineated and unambiguous signification. *See National Life & Accident Ins. Co. v. Lokey,* 166 Ala. 174, 52 So. 45, 46-7 (1910); *Julius v. Metropolitan Life Ins. Co.,* 299 Ill. 343, 132 N.E. 435, 437 (1921); *Jones v. Prudential Ins. Co.,* 208 Mo. App. 679, 236 S.W. 429, 432 (1922); *Culbreth v. Prudence Life Insurance Company,* 241 S.C. 46, 127 S.E.2d 132, 135-36 (1962); *American Trust & Bkg. Co. v. Lessly,* 171 Tenn. 561, 106 S.W.2d 551, 552, 111 A.L.R. 59 (1937). The main issue presented by this appeal, to which we shall turn shortly, is in fact a product of this ambiguity. Here, respondent in effect attempts to hold his adversary, by way of general references at discovery that this policy was one of life insurance, to a conclusion that the discovery concessions can only refer to life insurance as defined in Article 48A, section 63 (defining life insurance) and used in section 410 (a) (5) (limitation of liability in case of suicide), when in fact neither the technical usage nor the statutory definition was specified by the discovery requests. To be sure, a party need not understand the full legal ramifications of a factual concession before he is bound by the admission, but, as a prerequisite to being so constrained, the party certainly must be put on notice by sufficiently specific discovery requests of the factual nature of that which he is required to answer before he can be held to have yielded on the point. While the procedure established for pre-trial admissions serves the laudable goal of narrowing the factual issues to be tried so as to avoid the necessity of proof at trial of matters not in dispute, *see Mullan Contracting Co. v. International Bus. Machs. Corp.,* 220 Md. 248, 260, 151 A.2d 906, 913 (1959), that objective is not advanced by the use of this proce-

dure to bind the unwary (by utilization of imprecise requests) to admissions not intended to be conceded. We cannot say that the interrogatories and admission tendered INA appropriately identified the inquiry and facts which the appellant was to answer and admit. The term "life insurance" in everyday parlance normally connotes a contract to pay benefits upon the death of some person, and this policy, be it accident or life insurance, falls within the embrace of this general usage, in that Mr. Aufenkamp is entitled to receive, under certain circumstances, insurance benefits upon the death of his wife. This is not to say, however, that the insurer has conceded that this insurance contract is technically a life insurance policy as defined in section 63 and used in section 410(a).[2]

The alternate holding of the trial judge, and the primary contention of the respondent before this Court, that the insurance policy involved in this case is as a matter of law life insurance as that phrase is used in the insurance code, presents a somewhat more troublesome problem. As an aid to the explanation of our disagreement with the circuit court's ruling on this point, we preface our remarks on the propriety of that determination with the observation that, in our view, by focusing narrowly on the suicide exclusion clause of the policy, both the parties and the trial court have overlooked the dominant purpose of this insurance contract as reflected by the risk assumed. This myopia has resulted both in the failure to make certain factual determinations which ought to precede a judgment as a matter of law, and in the resolution of a legal question which may well not need to have been answered to properly resolve this contractual dispute. Probably as a result of the purported judicial admissions of INA that the present contract was one of life insurance, all concerned concentrated on whether this was such a policy (either by admission or as a matter of law by statutory definition), apparently on the assumption that if it

---

**2.** The parties do not raise, and we indicate no ruling on, whether these ostensible admissions, seemingly matters of law, are subject to concession through discovery. *See* Maryland Rules 417 and 421.

were, coverage would exist under the policy since the suicide exclusion clause of the contract would be voided by section 410 (a) (5). Thus, INA's failure to specifically ground its argument on the coverage clause of the policy may have contributed to the erroneous granting of a summary judgment which, in order to be proper, must have been predicated on the supposition that without the suicide exclusion clause, coverage would exist under the policy. The factual question whether Mrs. Aufenkamp's demise was a result of her own intentional act, under this approach, was seen to be of no consequence if, as argued by appellee, this was truly a life insurance compact. In this posture, the issue came before and was disposed of by the circuit court, and not surprisingly, the case is now before us with the issues identically framed.

What has been overlooked, however, is that whether coverage exists under this insurance contract turns in the first instance upon the principal purpose of the policy exhibited in its coverage clause. See *Bowles v. Mutual Ben. Health & Accident Ass'n.,* 99 F.2d 44, 47-8 (4th Cir. 1938); *Capitol Life Ins. Co. v. Di Iullo,* 98 Colo. 116, 53 P.2d 1183, 1184 (1936) (en banc); *Brunswick v. Standard Acc. Ins. Co.,* 278 Mo. 154, 213 S.W. 45, 47-48 (1919). Only if it is determined that the insurer has contractually assumed the risk for the particular type of malady suffered in a given case will it be necessary to proceed to a determination whether that risk, otherwise undertaken in the clause which delineates the contingencies insured against, is specifically disclaimed elsewhere in the policy, and, if so, whether that exclusion is legally enforceable. *Capitol Life Ins. Co. v. Di Iullo, supra; Brunswick v. Standard Acc. Ins. Co., supra.* Here, by centering initially on the exclusion clause, the legal determination that INA owes benefits under what on its face appears to be an accident policy is made when, in fact, there has been no judicial consideration of a threshold issue — whether suicide is a risk assumed by the insurer under the coverage clause. Indeed, the trial court effectively determined that this is a life insurance policy without ever having considered specifically the nature of the risk for which the

insurer is contractually liable, which is where inquiry should be directed to determine whether the policy is one of life insurance. As was stated by the Supreme Court of Colorado when faced with a similar issue,

> [t]here [may be] no liability on the part of the insurer, not because the insured committed suicide, but because there was no accident, and, as we have seen, the double indemnity clause provides for payment only in case of death by accident. It does not cover nonaccidental death. It may just as reasonably be held that on a straight life insurance policy, providing for the payment of money on the death of the insured, the insurer is liable where there has been no death, as to hold that on a policy providing that money shall be paid in case of death by accident, the insurer is liable where there has been no accident. [*Capitol Life Ins. Co. v. DiIullo, supra,* 53 P.2d at 1184. *See also Brunswick v. Standard Acc. Ins. Co., supra,* 213 S.W. at 47-48.]

Thus, here, contractual liability has been determined even though a death, arguably a suicide, may not be a "covered occurrence" under the policy which includes, as applicable to this case, only "bodily injury resulting directly and independently of all other causes from an accident. . . ."

Under the view we take, the threshold question here should have been viewed as factual, and one that was not resolved: Was Mrs. Aufenkamp's death the direct result, independent of all other causes, of an accident? If the death were determined to have been so caused, then nothing would have lingered for analysis, for liability under the policy would have clearly existed. The resolution of this factual dispute would not have necessarily disposed of this litigation, however, for if the trier of fact were to have concluded contrarily, that Mrs. Aufenkamp took her own life by jumping from her bedroom window, as a theoretical matter the insurance company would not necessarily have been free from liability under the contract. This is so because of the generally recognized principle, to which this State

subscribes, that taking one's own life while insane undeniably is accomplished without intention, *see Knickerbocker Ins. Co. v. Peters,* 42 Md. 414, 417-21 (1875) (coverage exclusion for death caused "by his own hand or act" held not to prevent recovery by insured who "killed himself in a fit of insanity impelled by an insane impulse he could not resist"), and thus is an "accident" within the meaning of that term as used in accident policies. *See* Couch on Insurance 2d § 41.197, p. 222 (1962) (citing authorities). Therefore, unless otherwise excluded in the policy, suicide while insane normally is a risk contractually assumed under such an insurance agreement. Here, of course, the insurance document excludes coverage for suicide while sane *or insane,* which disavowal, unless rendered void by statute or other public policy considerations, is enforceable. *Accord, Bigelow v. Berkshire Life Ins. Co.,* 93 U.S. 284, 286, 23 L. Ed. 918 (1876), and cases cited by *1 Appleman, Insurance Law and Practice* § 363, p. 657-63 (1965). Appellee argues section 410 (a) (5) accomplishes such an avoidance, and it is only at this point in the analysis that the legal question whether that statute applies to this insurance contract (thus voiding the suicide exclusion clause) would have arisen. In other words, it should not have been until the trier of fact had determined that Mrs. Aufenkamp's death was not the result of a fortuitous mishap, but rather was caused by self-destruction impelled by an insane impulse and passion rendering it an "accident," that the legal issue resolved below needed to have been addressed; only then would the validity of the suicide exclusion clause have become germane.

The rather unusual posture that this case assumes, which we have just paused to describe at length, is of little consequence in light of our disagreement with the circuit court's interpretation of the insurance statutes applicable to this case. In seeking an affirmance of the summary judgment, Mr. Aufenkamp places great weight, as he must, on the statutory definition of life insurance contained in the insurance article:

> *Life insurance is insurance on human lives,* and includes also the granting of:

(1) Endowment benefits;

(2) Additional benefits in the event of death by accident or accidental means;

(3) Additional disability benefits in the event of dismemberment or loss of sight;

(4) Additional disability benefits operating to safeguard the contract from lapse, or to provide a special surrender value, or special benefit, or annuity, in the event of total and permanent disability; and

(5) Optional modes of settlement of proceeds of life insurance.

Life insurance does not include workmen's compensation insurance but does include burial insurance. [Md. Code (1957, 1979 Repl. Vol.), Art. 48A, § 63 (emphasis added).]

The respondent urges that this policy clearly provides coverage for the loss of the life of his wife, and to the extent that it does, should be viewed as encompassed within the broad statutory definition, "insurance on human life." To counter the position of INA that this policy constitutes health insurance and thus that the statute governing limitation of liability for suicide is immaterial, Mr. Aufenkamp asserts that section 437 of the insurance code expressly makes the health insurance subtitle inapplicable to life insurance:

Nothing in this subtitle shall apply to or affect:

\* \* \*

(3) Life insurance, . . . which contain only such provisions relating to health insurance as:

(i) Provide additional benefits in case of dismemberment or loss of sight, or of death by accident or accidental means. . . . [Code (1957, 1979 Repl. Vol.), Art. 48A, § 437.]

Reliance on the just-quoted provision, in our view, neither adds nor detracts from the husband beneficiary's primary

thrust that this is life insurance, for this statute contributes little to the resolution of the issue. While section 437 does indeed make the health insurance subtitle inapplicable to life insurance, including health related provisions normally found in such policies, it is not informative or definitive as to whether this policy is, as a threshold matter, in the nature of life or health insurance.

We are convinced that the policy issued by INA is, consonant with the contract's title, accident and special hazards insurance which, under the applicable statutory terminology is health, and not life, insurance. In arriving at this determination, we observe preliminarily that the very structure of the insurance code leads us to conclude that the various types of insurance defined there, *see* Code (1957, 1979 Repl. Vol.), Art. 48A, §§ 63-74, constitute separate categories of insurance which for the most part are mutually exclusive. This is not to say that there is not, and that the legislature did not recognize, the overlap that inherently exists between the coverage under some of these varying types of insurance. This litigation, in fact, springs from an overlap between two types of insurance — life and health — which in some respects presents perhaps the best example of seemingly coinciding coverage. *See 1 Appleman, Insurance Law and Practice,* § 16, p. 44 (1965). But we think both the structure of the insurance article in general as well as particular sections therein indicate that the General Assembly was cognizant of this ambiguity, and attempted to specifically define as either one or the other the risks normally undertaken and the benefits commonly incident to each type of insurance. In arriving at this conclusion, there is no intimation that a single policy of insurance cannot contain coverage falling into more than one statutory category. We recognize that commonly one insurance contract will insure against various risks and provide benefits for sundry kinds of harm, and the code, except for specific and well-delineated exceptions, does not affect this practice. What we determine is that under an insurance policy covering various risks, each risk assumed will normally constitute a kind of insurance encompassed by only one stat-

utory definition, and governed by the regulations applicable to that category alone.

In 1963 the insurance code of this State was repealed and a new one enacted in its place that represented in large part the work product of the Governor's Commission to Study the General Insurance Laws of Maryland. A perusal of this enactment, substantially identical in form with the present Article 48A, reveals that, in pursuit of the objective "to classify and recodify the subject matter of the insurance laws into a convenient and usable form," Report of the Governor's Commission to Study the General Insurance Laws of Maryland To: Legislative Council, p. iii, October, 1961, particular limitations and restrictions applicable to each of various types of insurance defined in the insurance code — life, health, property, casualty, surety and title — are collected in subtitles pertaining only to one of these delineated categories of insurance. *See* Code (1957, 1979 Repl. Vol.), Art. 48A, subtitles 23-30. In addition, some effort has been made to define precisely the nature of various benefits normally payable under a given type of policy.

In the case of life insurance, the definition contained in section 63 pertaining to that subtitle, in addition to describing the nature of the risk assumed by such a contract as insurance on human lives, includes among other payments, as noted earlier, "[a]dditional benefits in the event of death by accident or accidental means," "[a]dditional disability benefits in the event of dismemberment or loss of sight," and "[a]dditional disability benefits operating to safeguard the contract from lapse, or to provide a special surrender value, or special benefit, or annuity, in the event of total and permanent disability." Thus, payments which might otherwise be perceived to be health insurance, such as double indemnity benefits payable upon accidental death or various types of disability payments, are expressly designated as life insurance. In section 66, health insurance is defined as

> *insurance of human beings against bodily injury, disablement, or death by accident or accidental*

*means,* or the expense thereof, or against disablement or expense resulting from sickness, or childbirth, or against expenses incurred in prevention of sickness, or dental care, and every insurance appertaining thereto. Health insurance does not include workmen's compensation insurance. [Code (1957, 1979 Repl. Vol.), Art. 48A, § 66 (emphasis added).]

This provision makes it clear that insurance coverage contingent on a death caused specifically as a result of an accident or through accidental means is denominated health insurance, even though conceptually it is possible to characterize this type of coverage, because it pays benefits upon a death, as life insurance. *See Logan v. Fidelity and Casualty Co.,* 146 Mo. 114, 47 S.W. 948 (1898). Therefore, what might otherwise be perceived to be life insurance is specifically delineated to be health insurance by section 66. *Accord, Culbreth v. Prudence Life Insurance Company, supra,* 127 S.E.2d at 136. It is apparent, then, that not all insurance benefits whose payment is triggered by the death of a person are properly conceived to provide life insurance coverage as defined in the statutes of this State. Moreover, section 437, on which as we have seen appellee strongly relies, furthers this statutory scheme (and complements section 63) by making the legislative regulations regarding health insurance inapplicable not only to life insurance but also to "additional benefits in case of dismemberment or loss of sight, or of death by accident or accidental means," or coverage which operates "to safeguard such contracts against lapse, or to give a special surrender value or special benefit or an annuity in the event that the insured . . . becomes totally and permanently disabled. . . ." Code (1957, 1979 Repl. Vol.), Art. 48A, § 437(3) (i) and (ii). Section 437, then, tracks by way of exclusion those benefits defined to be life insurance in section 63. Any lingering doubt as to the exclusivity of the subtitles corresponding to the various types of insurance, should be dispelled by knowledge that the following provision, originally contained in the 1963 bill

as introduced, which, when enacted, made substantial changes in the insurance code, was deleted prior to passage:

62. Definitions Not Mutually Exclusive.

Certain insurance coverages may come within the definitions of two or more kinds of insurance as defined in this subtitle, and the inclusion of such coverage within one definition shall not exclude it as to any other kind of insurance within the definition of which such coverage may likewise be reasonably included. [See 1963 Laws of Maryland ch. 553, § 1, Art. 48A, § 62, indicating deletion prior to enactment.]

Having established a legislative intent to create separate generic categories of insurance, each for the most part distinct from the other, it is clear that the death benefit contemplated by the insurance contract before us either constitutes a payment on life insurance or health insurance, for it cannot be both. The issue here raised cannot be resolved by a simple examination of the terse and somewhat tautological statutory definition of life insurance, and a comparison of that definition with the fact that benefits under this policy are payable, in part, upon the death of a human being. Rather, the answer in our view is derived from an examination of the risks normally assumed by an insurer under a life or health policy, and a juxtaposition of those risks with those assumed by INA under this policy. While the distinction between life and health insurance is at times somewhat obscure, this obfuscation should not befuddle one into the belief that the two types of policies are essentially the same so as to render the statutory provisions pertinent to one applicable to both. The dissimilarity emerges from an understanding of the divergent risks assumed under life and health policies, a distinction which we believe to have been best stated by the Ohio Court of Appeals:

Life insurance generally includes the occurrence of death by accident as one of the conditions which call for payment by the company, as well as death

from other causes. Accidental death policies include only injuries by accident causing death, and to that extent they each provide insurance of life. Yet, neither of these two kinds of policies is for that reason brought within the same class of policy. In other words, in a policy of life insurance, death is the contingency insured against; and if it be the result of an accident, the accident is but an incidental factor; while in an accidental death policy, the accident causing death is the thing insured against, and the death is but one of the incidents which creates liability. [*Oglesby-Barnitz Bank & T. Co. v. Clark,* 112 Ohio App. 31, 15 Ohio Ops 2d 415, 175 N.E.2d 98, 103, 83 A.L.R.2d 1337, 1344 (1959). *See also, Simmons v. Continental Casualty Company,* 285 F. Supp. 997, 1002-03 (D. Neb. 1968), *aff'd,* 410 F.2d 881 (8th Cir. 1969); *National Life & Accident Ins. Co. v. Lokey,* 166 Ala. 174, 52 So. 45, 46 (1910); *Loades v. Woodmen Accident Co.,* 134 Kan. 337, 5 P.2d 798, 798-99 (1931); *Jones v. Prudential Ins. Co.,* 208 Mo. App. 679, 236 S.W. 429, 432 (1922); *Culbreth v. Prudence Life Insurance Company,* 241 S.C. 46, 127 S.E.2d 132, 135-36 (1962).]

Stated somewhat differently, the contingency insured against under a life policy is the occurrence of an inevitable result — death — regardless of its cause unless specifically excepted by the policy. Therefore, assuming compliance with the terms and continuation of coverage, upon issuance of such a policy the insurer undertakes an absolute risk of loss and the insured acquires an immediate estate which at his death is transferred in accordance with the terms of the contract. On the other hand, an accident policy is (except perhaps for its death benefits) an indemnity contract contingent on the happening of an unexpected and unforeseeable occurrence, and therefore, an evitable event. The risk in this type of policy assumed by the insurer is only contingent, and the interest obtained by the insured (or beneficiary) is only inchoate and defeasible.

With these distinctions in mind, we observe that there are, as we believe our legislature thought, public policy reasons for protecting the beneficiary under a life insurance contract from an exclusion for death by suicide, because that compact is in the nature of an investment whose date of return is the only factor which is uncertain. Those public policy considerations, however, do not champion the extension of the statutory restrictions to health insurance, since the insurer, by this type of insurance, accepts liability for death occurring in only a limited manner, and the insured's expectation is in the nature of a bonus created by the happening of an unexpected and unfortunate event. *See* Note, *Insurance: Applicability of the Missouri Suicide Statute to Accident Policies and Double Indemnity Provisions of Life Insurance Policies,* 1959 Wash. U.L.Q. 183-88. No reason has been presented to us why the legislature would have intended that exclusions from liability for suicide apply to accident insurance policies, and, in the absence of a much more definitive statement of legislative intent, we refuse to read section 410 (a) (5), in combination with section 63, to do so.

Moreover, we also point out that if the beneficiary were correct that health insurance, to the extent it pays death benefits, is life insurance as defined by the code and that therefore section 410 restrictions are applicable, there could be no accident insurance paying death benefits in this State. This is because section 410 provides that "[n]o policy of life insurance shall be delivered ... if it contains a provision which excludes or restricts liability for death caused in a certain specified manner . . .," except that the policy may contain any of five enumerated exceptions from which death by accident is conspicuously absent. Therefore, to the extent we were to hold death benefits payable under accident policies to be life insurance, the coverage restriction to death occurring only by accident would be void by virtue of section 410 (a). Quite clearly, that was not the intention of the legislature, which, in section 66, specifically defined this type of contractually assumed risk to be health insurance and contemplated its existence as such.

Faced with the impediment to recovery created by this statutory scheme, Mr. Aufenkamp musters *Logan v. Fidelity and Casualty Co.,* 146 Mo. 114, 47 S.W. 948 (1898) and *Md. Casualty Co. v. Gehrmann,* 96 Md. 634, 54 A. 678 (1903), as supportive of his contention that death benefits payable under health policies are subject to the restrictions contained in the life insurance subtitle, and additionally points out that the United States Supreme Court has spoken on the subject by "endors[ing] the rationale of *Logan*" in *Whitfield v. Aetna Life Insurance Company,* 205 U.S. 489, 27 S. Ct. 578, 51 L. Ed. 895 (1907). In *Gehrmann,* this Court was presented almost eighty years ago with the issue whether the warranties in an application for an accident insurance policy were within the scope of a statute which precluded any misrepresentations made by the insured in good faith from effecting a forfeiture of coverage under a life insurance policy unless the untruth related to some matter material to the risk. Our predecessors concluded that this nonforfeiture statute was intended by the legislature to be applicable to accident policies, primarily as a result of an 1888 enactment (ch. 424 of the Acts of that year) which declared that

> any person * * * making any engagement for the payment of ... benefits in the event of sickness, *accident,* or death * * * shall be deemed and taken to be a life insurance company within the meaning of this article, and shall be subject to all the requirements of law applicable to said life insurance companies. ... (Emphasis added).

Thus, because accident insurance companies (i.e., under the statute, a person who pays benefits in the event of accident) were subject to the legal requirements pertinent to persons issuing life insurance, the nonforfeiture statute was held applicable to the accident policy then before the Court. A comparable statute to that on which our *Gehrmann* decision was grounded still exists today, with the notable absence from its terms of the crucial words "sickness" and "accident." *See* Code (1957, 1979 Repl. Vol.), Art. 48A, § 64. Instead, at present, as we have seen, there exist separate definitions for

life and health insurance, and, indeed, separate subtitles establishing distinct regulations with regard to each type of insurance. While at the time of our *Gehrmann* decision, both health and accident insurance were subject to the restrictions applicable to life insurance policies and companies, much has transpired over the interim eight decades; as the nature of the insurance business has become more intricate, it is clear, as is evident from our prior discussion as well as the information set out in the margin below, that the legislature has risen to the task by drawing its laws more narrowly and creating separate sets of regulations for the various genre of insurance.[4]

The 1898 *Logan* decision of the Missouri Supreme Court which the *Gehrmann* opinion quoted and relied upon in 1903, contains broad language which is, with some justification, cited by Mr. Aufenkamp in support of his claim that death benefits paid pursuant to accident policy coverage should be viewed as life insurance, and that a statute voiding suicide exclusion clauses in life policies, not unlike section 410 (a) (5) now before us, is also applicable to death benefits payable under accident policies. *Logan v. Fidelity and Casualty Co., supra,* 47 S.W. at 949-51. Although our present insurance code leads us to a different conclusion, we do not completely spurn the reasoning of the *Logan* decision; what was said there, considering the remedial nature of insurance regulations and the inherent similarity between

---

**4.** In 1939, the statute relied upon by the *Gehrmann* court was amended so as to delete the words "health" and "accident," and a new section was enacted which made "any company . . . insuring against bodily injury, disablement, or death by accident . . ., a health and accident insurance company . . . and . . . subject to all the requirements of law applicable to casualty insurance companies." *See* 1939 Laws of Maryland, ch. 528, §§ 1, 2, Art. 48A, §§ 82 and 82½. Two years later, the legislature adopted the Uniform Individual Accident and Sickness Policy Provisions Law, which established a myriad of requirements applicable to policies of accident and health insurance issued in this State. *See* 1941 Laws of Maryland, ch. 904. As part of the major revisions made pursuant to the repeal and reenactment of the insurance code in 1963, subtitle 25, termed "health insurance" (but defined in section 66, as now, to include what formerly was called "accident insurance"), was enacted, which created a comprehensive set of regulations governing the issuance and content exclusively of health insurance policies in Maryland, and no longer subjecting those issuing this type of policy to the limitations applicable to casualty insurance companies. *See* 1963 Laws of Maryland, ch. 553, § 1, Art. 48A, §§ 437-470.

the two types of coverage, in light of that state's statutes then existing, possessed some force in logic. Nonetheless, the *Logan* decision, and the Supreme Court's *Whitfield* decision interpreting what it surmised to be Missouri law from the broad language contained in *Logan,* has caused the courts of that state some consternation. For instance, in *Brunswick v. Standard Acc. Ins. Co., supra,* 213 S.W. at 47-48, the court distinguished *Whitfield* (which would appear to be directly in point) and interpreted *Logan* to apply only to cases where the insured died by suicide committed while insane, because when a sane insured takes his own life, "neither sound sense nor logic will permit us to hold that an act intentionally done by a sane man is an accident." The court in *Brunswick* further reasoned:

> While [the Missouri statute, not materially unlike section 410 (a) (5) of the Maryland Code,] makes absolutely void all stipulations exempting liability on account of suicide and all defenses bottomed on the fact of suicide, yet it nowhere relieves the plaintiff, in an action upon a policy of accident insurance, from making proof that the death of the assured was caused by an accident. [213 S.W. at 49].

Thus, the coalescence of *Logan* and *Brunswick* leads to the rather anomalous result that the suicide exclusion statute, by its terms pertinent to insurance on life, was applicable to death benefits payable under an accident policy only if the death in the particular case, as a *factual* matter, resulted from suicide while insane. The Supreme Court's *Whitfield* decision was distinguished "as the utterance of a great court, unfamiliar, however, with many of the intricacies of our local statutes and rulings thereon." 213 S.W. at 49. See also *Capitol Life Ins. Co. v. DiIullo, supra,* 53 P.2d at 1184-86; *Sommer v. Metropolitan Life Insurance Co.,* 449 S.W.2d 644 (Mo. 1970), and Note, *Insurance: Applicability of the Missouri Suicide Statute to Accident Policies and Double Indemnity Provision of Life Insurance Policies,* 1959 Wash.

U.L.Q. 183-88, for further discussion of the subsequent history of *Logan.*

Having discussed generally our insurance code, the fundamental differences between life and health insurance and the authorities relied upon by Mr. Aufenkamp, we now return to this particular policy, and in doing so, are confronted with an insurance contract which manifestly constitutes health insurance. The policy provides that INA

> agrees to insure the eligible persons covered by said application against loss . . . resulting from a covered occurrence . . ., except that such loss shall not include death, dismemberment or disablement due to natural causes. The words 'covered occurrence' shall be defined as (a) bodily injury resulting directly and independently of all other causes from an accident. . . .

It is evident that the risk assumed by INA under this policy is the occurrence of a loss resulting from an accident, which loss may be in the form of death, dismemberment or disability. The appellee confuses the loss suffered with the risk undertaken, and thereby reaches the incorrect conclusion that the contract is a life insurance policy. The fact that the particular loss suffered was death is contractually unimportant (and, indeed, would not by itself give rise to liability under the policy) unless by additional evidence it is shown that the death resulted from an accident. See *Capitol Life Ins. Co. v. DiIullo, supra,* 53 P.2d at 1184; *Brunswick v. Standard Acc. Ins. Co., supra,* 213 S.W. at 47. If death occurred by accident or through accidental means, the fact that the loss suffered was death is unimportant except to determine the extent of the benefits to be paid under the policy. In other words, whether coverage exists under this insurance compact is in no way contingent on a death; the loss of life only affects the schedule of payments. In our view, this is precisely the type of policy contemplated in the definition of health insurance as "insurance of human beings against . . . death by accident or accidental means. . . ." Code

(1957, 1979 Repl. Vol.), Art. 48A, § 66. Because section 410, restricting exclusions for death caused by suicide, by its terms is applicable only to life insurance, it is not germane to this suit and does not void the suicide exclusion clause contained in this policy. Therefore, whether Mrs. Aufenkamp died as a result of suicide while sane or insane is of no consequence, since, in either situation, coverage does not exist under the insurance contract.

Our determination that this policy is not one of life insurance does not conclude the case, for we only decide here that the grant of summary judgment in favor of Mr. Aufenkamp was error. Accordingly, we remand this action for a trial on the issue whether the insured's death was the result of an accident giving rise to coverage under this policy as here construed.

> *Judgment of the Circuit Court for Montgomery County reversed and case remanded for further proceedings.*
> *Costs to be paid by appellee.*

*Eldridge, J., concurring:*

I agree with the result reached in this case, but I cannot subscribe to all of the reasoning in the majority's opinion.

I

Initially, the majority focuses on the question of whether or not Mrs. Aufenkamp's death was an "accident" for purposes of the coverage clause of the insurance policy. This issue was not the basis for the insurer's opposition to the motion for summary judgment, and it was not raised on appeal. The Court is injecting, on behalf of an *appellant,* an issue into the case which neither side has raised. The appellant insurer has acquiesced, for purposes of its opposition to the motion for summary judgment, and for purposes of this

appeal from the order granting summary judgment, in the idea that the suicide was an "accident" for purposes of the coverage clause.

It might be that the appellant's acquiescence regarding the coverage clause issue was not inadvertent, as the insurance company may have determined, by investigation, that the deceased was insane and that, therefore, the death was accidental. At any rate, parties to litigation have a right to limit the disputed issues, as long as they are not "jurisdictional."

After it has been determined that summary judgment was improper, because the trial judge improperly resolved the issues raised in the summary judgment proceeding, I would have no objection to pointing out that other pertinent issues may be raised by either side at the trial, including the coverage clause issue, if one or the other side so desires. However, I do not believe that the Court, on its own, should inject this as a "threshold" question. The reversal in this case should be based entirely upon our disagreement with the trial court's ruling.

## II

In my opinion, the central issue in this case is whether § 410 of the Insurance Code, Art. 48A, applies to the accidental death provision of this contract of insurance. In deciding this question, the majority seems to proceed upon the theory that by defining terms in §§ 62-73, the Insurance Code divides insurance policies into exclusive substantive categories. Thus the initial determination, according to the majority, must be to decide into which exclusive category the policy fits, and then to determine whether or not a particular code provision applies to that category. Here, the Court finds that a policy covering assorted risks, including accidental death, fits into the exclusive category of "Health Insurance" (Art. 48A, § 66). The majority further finds that Art. 48A, § 410, was not intended to apply to policies of "Health Insurance," and thus it does not apply here.

While I agree with the result, I do not agree with the majority's approach. I doubt that the Legislature, in enacting statutory definitions, intended to categorize every insurance policy into an exclusive type. There is nothing in the Insurance Code implying this, and it is illogical. A homeowner's insurance policy, for example, may cover losses by fire, liability, theft, etc. Obviously those provisions of the Code relevant to fire insurance would govern some portions of the policy, and those provisions of the Code concerning other types of insurance would govern other portions. In any case, it would be impossible to call the policy one of fire or of liability or of theft, and it is obvious that nothing would be served by such a categorization. The categorization question should not even be asked because it is irrelevant to the real issue of whether or not the legislature intended a specific statutory provision to apply to a particular policy provision.

In this case, the majority uses the categorization approach, concludes that the entire policy is one of "Health Insurance" under Art. 48A, § 66, and not "Life Insurance" under Art. 48A, § 63, decides that Art. 48A, § 410, does not apply to "Health Insurance," and thus decides that § 410 does not apply to Mr. Aufenkamp's policy. I prefer to examine the policy provision (without artifically categorizing it) and the statute, and to determine whether the Legislature intended that the latter apply to the former.

The statutory definition of life insurance contained in Art. 48A, § 63, is "insurance on human lives," including also certain specified benefits. This definition is not "technical"; it corresponds to the ordinary, commonly understood, meaning of the term "life insurance." The insurance policy in the instant case includes a provision for an accidental death benefit. The death benefit clause is clearly a form of insurance on a human life and falls within the very general definition of "life insurance" in § 63.

However, the death benefit provision in this policy is not the type of life insurance to which all provisions of the Code referring to "life insurance" can rationally be held to apply.

Specifically, it is clear that many, if not all, of the sections in the life insurance subtitle of the Insurance Côde, *i.e.,* subtitle 23, §§ 386-416, were not intended to apply to everything that comes within the broad general definition of "life insurance" in § 63.

Art. 48A, § 386, setting forth the scope of the life insurance subtitle, makes no reference to the broad definition in § 63. The scope of this subtitle can be ascertained by examining the provisions of the subtitle. Section 388 provides that "[n]o policy of life insurance, . . . shall be delivered or issued in this State" unless the policy contains all of the provisions required by §§ 389-399. However, many of the provisions required by §§ 389-399 could logically be applicable only to a "general" life policy, and not a "limited" life insurance policy or provision, even though both may fall within the definition of § 63.

For example, § 392 provides that if an insured's age has been misstated, coverage under the policy will be for the amount that the premium paid would have purchased had the age been properly stated. Under the categorization approach of the majority, this provision would presumably apply to a policy insuring only against accidental death, because such policy would come within the defined category of life insurance under § 63. Since age is largely irrelevant to accidental death risks, the Legislature could hardly have intended the result which the majority opinion necessarily implies — that § 392 would apply to an accidental death policy because it is a form of "insurance on a human life." The more reasonable interpretation is that § 392 was meant to apply to "general" life insurance in which age is a factor in determining premiums, and not to limited life policies in which age is largely immaterial, although they both may come within the § 63 definition.

Similarly, the legislature rationally could not have intended that § 410 apply to all policies of insurance on a human life. A more reasonable interpretation is that the restrictions in § 410, including that against suicide exclusions in § 410 (a) (5), were meant to apply to "general"

policies of life insurance. No doubt the restrictions were designed to prevent insurers from marketing purportedly general policies of life insurance which, in the fine print, excluded various contingencies of death.

If the appellee's interpretation of Art. 48A, § 410, were correct, an insurance company could not provide coverage for accidental death benefits in a policy that would not permit recovery for death by natural causes, since this is not one of the permitted restrictions of § 410 on the manner of death. I agree with the majority that it is apparent that this was not the legislative intent. The legislature did not intend that every policy, happening to provide some type of insurance on a human life, be subject to all of the provisions which would apply to a full-blown general life insurance policy.

To reiterate, I disagree with the majority's general approach that insurance must be all one type or another. The policy here has a feature which fits within the statutory definition of "Life Insurance" (§ 63) and has other features which coincide with the definition of "Health Insurance" (§ 66). But these features do not mean that the policy as a whole is either life insurance or health insurance and not both. I do not believe that in merely defining statutory terms, the General Assembly intended to categorize all policies of insurance into exclusive pigeon holes. The question which must be asked in each case is whether the Legislature intended a particular statutory provision to apply to a particular policy provision. The answer is not found by calling the policy one thing or another. Thus, § 410 (a) (5) does not apply to Mr. Aufenkamp's policy, *not* because that policy is "Health Insurance" and not "Life Insurance," but because it is very clear that the Legislature did not intend that limited life insurance policies, covering only death by accidental means, be subject to § 410.

### III

Finally, I believe that the majority's approach to the requests for admission may seriously undercut the value of this pretrial discovery procedure.

In this case, appellant INA responded affirmatively to a request for admission and interrogatories asking whether an application had been made for a policy of "life insurance," and whether such policy had been issued and was in effect at the time of Mrs. Aufenkamp's death. Yet, as I read the majority opinion, INA is not in any way bound by these answers because "life insurance" is a term defined by law. However, answers to requests for admissions will normally involve words that may be defined by law. But those words, nevertheless, may have a plainly understood meaning, and I believe that the party answering is bound accordingly (unless the question or answer indicates a specialized meaning).

As I previously pointed out, § 63 of Article 48A defines "life insurance" in a manner that corresponds with common usage of that term. There is no reason why INA should not be bound by this admission in accordance with the commonly understood meaning of the words. While the question of whether a policy of life insurance was issued and in effect may have a legal aspect, I think it is clear that the question was basically factual, designed simply to eliminate the issue of whether a policy had been issued. In light of INA's affirmative answers, I do not believe that INA could later deny that some type of life insurance policy had been issued and was in effect. *See Murnan v. Joseph J. Hock, Inc.,* 274 Md. 528, 534, 335 A.2d 104 (1975), where Judge Levine stated for the Court:

> "In short, if Rule 421 is to fulfill its unquestioned function, to eliminate the need to prove factual matters at trial which the adversary cannot fairly contest, the admission produced by the rule must be conclusively binding. A contrary interpretation would reduce the rule to a 'useless appendage.'"

However, as indicated earlier, I do not believe that everything which comes within the commonly understood meaning of "life insurance," as embodied in § 63, is subject to the life insurance subtitle of the Code and particularly

§ 410. For this reason, appellant's responses did not constitute an admission that the limitations on coverage imposed by § 410 are applicable to the type of life insurance involved here. In other words, I believe that INA is bound by its statements that it had issued a current "life insurance" policy on the decedent as provided by the broad and commonly understood definition set forth in § 63. Nevertheless, because § 410 refers to a more limited use of the term "life insurance," applying only to general life policies, the applicability of the § 410 limitations on the manner in which insurance carriers may limit coverage was not admitted but remained an open issue to be resolved at the trial.

Judge Davidson authorizes me to say that she concurs in the views herein expressed.