PAMELA GUDNASON

V.

LIFE INSURANCE COMPANY OF NORTH AMERICA

Record No. 822061

April 25, 1986

Present: All the Justices

*Nicholas Sabalos* for appellant.
*Benjamin J. Trichilo (Lewis and Trichilo,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

In this contract action Pamela Gudnason sought to recover $50,000 under a group insurance policy from Life Insurance Company of North America (the Company) for the alleged accidental death of her husband, Ingi. The trial court ruled and, in denying Pamela's motion to reconsider the ruling, reaffirmed that the policy was not a life insurance policy, as alleged by Pamela, but was an accident policy no longer in effect at the time of Ingi's death. On appeal, Pamela argues, as she did below, that the Company was bound by admissions of its counsel that the policy was a valid group life policy. Pamela further contends that the trial court erred in ruling that the policy was not a life insurance policy.

The facts are undisputed. Pamela, an employee of ORI, Inc., applied for group insurance. On the front page of the certificate of insurance issued to her by the Company, effective December 1, 1980, was a copy of her signed application. The first sentence of the application stated that Pamela was applying for and authorizing salary deductions for the premium "to pay for accident insur-

ance" under the terms of the designated master policy. Terms and conditions of the coverage were set forth in detail in the certificate. Pamela was insured "against loss resulting directly and independently of all other causes from bodily injuries caused by accident." Pamela's husband was entitled to receive the principal sum of $100,000 upon her death by accident; Pamela was entitled to receive $50,000 upon her husband's death by accident. Among the exclusions from coverage were losses caused by or resulting from illness.

Pamela voluntarily terminated her employment on July 15, 1981. On that date, she signed a statement that she had been made aware of her right to convert "Life and Health Insurances" to individual policies and declined the offer. On August 19, 1981, Ingi died from a shotgun wound.

In her motion for judgment, Pamela alleged that under her insurance policy, a copy of which was attached as an exhibit, the Company insured the life of her husband, Ingi; that Ingi was killed in a "firearm accident" on August 19, 1981; and that Pamela had filed a claim under the policy for payment but the Company had denied the claim. The Company filed an answer and grounds of defense denying liability under the policy and asserting that Pamela had elected not to renew her policy on or about July 15, 1981, and that Ingi's death "did not arise directly and independently of all other causes from bodily injuries caused by accident."

The parties, by counsel, stipulated to certain facts and exhibits, including the fact that Pamela was issued a certificate of insurance by the Company "for accidental death and dismemberment" pursuant to a group insurance agreement between her employer and the Company. Copies of the certificate of insurance and the group insurance agreement were stipulated as exhibits. The parties agreed to copies of various reports verifying Ingi's death, but Pamela did not stipulate the cause or manner of death.

Shortly after the filing of the stipulation, the Company moved the trial court for summary judgment. In support of the motion, the Company stated that there was no policy in effect "insuring the life" of Ingi on the date of his death; that the exhibits established that Pamela was no longer insured upon the termination of employment on July 15, 1981, and her written election not to convert the group policy to individual coverage; and that the "policy

of group life insurance" issued to Pamela had been terminated on July 15, 1981.

In response to the Company's motion for summary judgment, Pamela filed a reply and a motion for declaratory judgment seeking to have the court declare the policy to be valid and enforceable. Citing the policy provision conforming the policy to the insurance requirements of the Virginia statutes, Pamela relied on Code §§ 38.1-428.1 and 38.1-428.3, providing as follows:

> *§ 38.1-428.1. Right to individual policy upon termination of employment or membership.*—In each such policy there shall be a provision that if the insurance, or any portion of it, on a person covered under the policy, other than a child of an employee insured pursuant to § 38.1-472.1, ceases because of termination of employment or of membership in the class or classes eligible for coverage under the policy, such person shall be entitled to have issued to him by the insurer, without evidence of insurability, an individual policy of life insurance without disability or other supplementary benefits, provided application for the individual policy shall be made, and the first premium paid to the insurer, within thirty-one days after such termination . . . .
>
> . . . .
>
> *§ 38.1-428.3. Death after termination of group insurance and before issuance of individual policy.*—In each such policy there shall be a provision that if a person insured under the group policy dies during the period within which he would have been entitled to have an individual policy issued to him in accordance with § 38.1-428.1 or 38.1-428.2 and before such an individual policy shall have become effective, the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made.

In rebuttal, the Company filed a memorandum of law acknowledging that each member of the ORI, Inc., insured group had the right to convert to an individual policy within 31 days after termination of employment; that when Pamela terminated her employ-

ment on July 15, 1981, her coverage continued until August 1, 1981; that Pamela never applied for an individual policy; and that she declined to exercise her right to convert. In the memorandum the Company stated that Pamela "had a right to convert her policy on or before August 31, 1981." The memorandum argued that § 38.1-428.3 was inapplicable because Pamela had not applied for an individual policy under § 38.1-428.1. Because she had not filed a timely application for conversion, the Company submitted, the policy was not in effect on August 19, 1981.

After a hearing in the trial court, the Company filed a memorandum of law on questions apparently raised by the court and not previously briefed — first, whether the policy in controversy was classified as insurance for accident and sickness or as group life insurance and, second, if the policy were for group life insurance, whether the extended coverage rights provided in § 38.1-428.1 began to run from the termination of eligibility or from the cessation of coverage. The Company argued that the policy was an accident and sickness policy and that its reference to issuance of a group life insurance policy in its motion for summary judgment was not a binding admission. The trial court, in proceedings that were not transcribed, agreed with this rationale and on July 16, 1982, granted the Company's motion for summary judgment.

Pamela moved for reconsideration of the court's ruling on the grounds that the Company had admitted every allegation necessary to prove her case and that the ruling was contrary to the facts and law. The motion included an extensive argument with citation of authorities. Pamela's principal contention was that the Company in its own pleading had admitted that the policy was a group life policy and should be bound by the admission. She also relied on the Company's statements in its earlier rebuttal memorandum that Pamela had a right to convert the coverage to an individual policy on or before August 31 but, having declined to exercise the conversion privilege, was not entitled to automatic conversion under § 38.1-428.3.

After conducting a hearing on Pamela's motion for reconsideration, the trial court denied the motion and reaffirmed its ruling that the policy was an accident and sickness policy rather than a life insurance policy. The provisions of §§ 38.1-428.1 and 38.1-428.3, therefore, were inapplicable. The court stated that the classification of the policy, whether group life or accident and sickness, presented a legal issue to be decided by the court and that

the reference by the Company to the policy as group life at a time when its classification was not an issue did not constitute a binding admission. By final order entered August 23, 1982, the trial court granted the Company's motion for summary judgment.

Pamela's policy contained the following conversion privilege:

> In the event that the insurance provided by Plan A of the policy to which this rider is attached (hereinafter referred to as "this policy") should terminate for any of the following reasons:
>
> (a)  termination of employment or membership; or
>
> (b)  termination of eligibility for any reason, except age or termination of the group or blanket policy or plan;
>
> the Insured/Owner, if under age 70, shall, subject to the conditions hereinafter stated, be entitled to have issued to him, without evidence of insurability, a policy of insurance (hereinafter referred to as "the converted policy") by making written application therefor within 31 days after such termination of insurance and by paying the first premium applicable to the class of risk to which the Insured belongs, to the Insured's attained age, and to the form and amount of insurance provided. The converted policy shall take effect on the date of such termination of insurance or on the date of application for the converted policy, whichever is later.

■ Why, then, does it matter whether the policy is for group life or group accident and sickness insurance? The reason is that Pamela contends that § 38.1-428.3 requires the Company to pay for Ingi's accidental death within 31 days after termination of group insurance even though she had not applied for an individual policy or paid the first premium. No such statute applies if the insurance is not group life. Under the conversion provision of her policy, Pamela could have applied for an individual policy prior to August 31, 1981, provided she paid the first premium. She did not do so.

■ Code § 38.1-428.1 contains language which may be less favorable to the insured than the language of Pamela's policy; if so, § 38.1-424 requires that the policy provisions prevail. The language of the policy leaves no doubt that the conversion privilege continues for 31 days after termination of the insurance. By stipulation, the Company has agreed that Pamela's coverage under the

policy terminated effective August 1, 1981. It is necessary, therefore, to review the ruling of the trial court that Pamela's policy was not a group life policy.

■ Code § 38.1-3 defines life insurance as follows:

Life insurance means and includes every insurance upon the lives of human beings and every insurance appertaining thereto payable in fixed or variable dollar amounts, or both. . . .

Code § 38.1-5 defines accident and sickness insurance as follows:

Accident and sickness insurance means and includes insurance against loss resulting from sickness, or from bodily injury or death by accident or accidental means, or both.

It is apparent that life insurance, as defined in § 38.1-3, means insurance against death regardless of cause. It is equally apparent that accident and sickness insurance, as defined in § 38.1-5, means insurance against death caused only by accident or, where the policy so provides, by accident or sickness, or both.

■ The language of Pamela's policy establishes that the coverage for death was limited to death by accident; the accident was the event insured against, and death was merely one class of injury for which benefits would be paid. *See Simmons* v. *Continental Casualty Company*, 285 F. Supp. 997, 1002-03 (D. Neb. 1968), *aff'd*, 410 F.2d 881 (8th Cir. 1969); *Loades* v. *Woodmen Accident Co.*, 134 Kan. 337, 338, 5 P.2d 798, 798-99 (1931); *Insurance Co. of No. America* v. *Aufenkamp*, 291 Md. 495, 502-03, 435 A.2d 774, 778 (1981); *Culbreth* v. *Prudence Life Insurance Company*, 241 S.C. 46, 53-54, 127 S.E.2d 132, 135-36 (1962) (policies insuring against death or disability resulting from accidental means held to be accident or health, not life, insurance policies); *see also Jones* v. *Prudential Ins. Co.*, 208 Mo. App. 679, 687, 236 S.W. 429, 432 (1922) (provision in policy limiting benefit for death within six months of its issuance, except for death caused by accident, did not alter character of policy as life insurance); *Oglesby-Barnitz Bank and Trust Co.* v. *Clark*, 112 Ohio App. 31, 38, 175 N.E.2d 98, 103 (1959) (policy providing benefits for death from any cause held to be life insurance); *see generally* 1A J.A.&J. Appleman, Insurance Law and Practice, § 361, at

476 (rev. ed. 1981); G. Couch, Cyclopedia of Insurance Law, § 1:76, at 244 (rev. 2d ed. 1984).

Pamela contends the Company's reference in its motion for summary judgment to the "policy of group life insurance" was an admission binding upon the Company. In *Aufenkamp*, the company issuing a similar insurance policy made general references at discovery to the policy as one of life insurance. The Maryland court reasoned that, though the discovery procedure designed to produce pretrial admissions serves a laudable goal, the procedure should not be used "to bind the unwary . . . to admissions not intended to be conceded." 291 Md. at 501, 435 A.2d at 777. Noting the ambiguity of the expression "life insurance," the court said:

> The term "life insurance" in everyday parlance normally connotes a contract to pay benefits upon the death of some person, and this policy, be it accident or life insurance, falls within the embrace of this general usage, in that [the beneficiary] is entitled to receive, under certain circumstances, insurance benefits upon the death of [the insured].

*Id.*, 435 A.2d at 777. Accordingly, the court held the insurer had not conceded that the contract was technically a life insurance policy under Maryland statutes governing such policies. *Id.*, 435 A.2d at 778. We agree with this reasoning.

The Company's reference to the policy, whether inadvertent or ill-advised, was not a binding admission. The classification of the insurance policy was a legal question to be resolved by the court. Classification was not an issue when the reference was made to the policy as one of group life insurance. In the general sense noted in *Aufenkamp*, the reference was not totally incorrect because the group policy did provide life insurance protecting against loss by accidental death. But the reference in the pleading was not an admission of fact. And the references to §§ 38.1-428.1 and 38.1-428.3 in a memorandum of law were nothing more than legal arguments presented in rebuttal to Pamela's memorandum. *Cf. Tuggle* v. *Commonwealth*, 230 Va. 99, 111 n.5, 334 S.E.2d 838, 846 n.5 (1985) (appellate court not bound to accept suggestions of a party concerning questions of law). We conclude that the trial court did not err in ruling that the Company had not

made binding admissions. Accordingly, we will affirm the judgment.

*Affirmed.*