[No. 35239-3-I.   Division One.   January 13, 1997.]

NANCY GOMEZ, *Appellant*, v. LIFE INSURANCE COMPANY OF NORTH AMERICA, *Respondent*.

*James M. Beecher* and *Hackett, Beecher & Hart*, for appellant.

*Joel E. Smith* and *Law Office of Joel E. Smith*, for respondent.

GROSSE, J. — ▮ After Steven Gomez committed suicide, his spouse, Nancy Gomez, sought recovery under a policy insuring for loss of life, limb, or eyesight caused by accidents. Because the policy specifically exempted injuries caused by suicide, the Life Insurance Company of North America (LINA) denied her claim. Gomez brought suit and now appeals the trial court's grant of summary judgment in favor of the insurer. Although suicide exclusions are generally prohibited in life insurance policies, we disagree with her contention that by extension the exclusion in this accident policy is void. The Washington insurance code provides for both life insurance and disability insurance. Disability policies containing an accidental death benefit are not precluded by statute from containing an exclusion for suicide.

## FACTS

Steven Gomez died after he jumped out of his third floor hospital window. After he jumped, Steven Gomez lived for a short time and he told a paramedic he had been in the hospital for drug and alcohol treatment, "he couldn't take it any more," and he "did this" to kill himself.

At the time of his death, Boeing employed Nancy Gomez and covered her under "Accident Policy SGL-747" issued by LINA. As a spouse of a Boeing employee, Steven Gomez was also covered against losses "resulting directly and independently of all other causes from bodily injuries caused by accident occurring while this policy is in force[.]" The policy provided various amounts to be paid for loss of life, limb, or eyesight that occurred within one year from the date "of accident." The policy expressly excluded "loss caused by or resulting from . . . [i]ntentionally self-inflicted injuries, suicide or any attempt thereat, while sane [or] insane."

LINA denied coverage based on the suicide exclusion. Gomez sought a declaration that she was entitled to recover, claiming (1) that the "suicide exclusion" in the

LINA policy was void under state life insurance statutes, and (2) that Steven Gomez did not commit suicide because he lacked the requisite intent to take his life. The trial court granted partial summary judgment on the suicide exclusion issue, ruling that LINA's policy was not a life or group life policy and the suicide exclusion was effective because it did not violate state statute.

Reserving the ability to appeal the suicide exclusion issue, Gomez did not oppose entry of an order that Steven Gomez took his own life. On September 2, 1994, the trial court ruled "that under the uncontroverted facts, Steven Gomez took his own life," and granted summary judgment in favor of LINA. Gomez appeals.

## ANALYSIS

Gomez argues that the life insurance statute prohibiting suicide exclusions[1] applies to this policy, contending that the policy's "death by accident" coverage is life insurance. A suicide exclusion in individual life policies[2] is permitted for only two years and is not a permitted exclusion in a group life policy.[3] LINA insured Nancy and Steven Gomez for more than two years. If the policy is not controlled by the life insurance provisions, the suicide

---

[1]*See* RCW 48.23.260.

[2]Under RCW 48.23.260, located in the individual life chapter:

"(1) The insurer may in any life insurance policy or annuity or pure endowment contract limit its liability to a determinable amount not less than the full reserve of the policy and of dividend additions thereto in event only of death occurring:

"(a) As a result of war . . . .

"(b) As a result of suicide of the insured, whether sane or insane, within two years from date of issue of the policy.

"(c) As a result of aviation under conditions specified in the policy."

[3]RCW 48.24.210, located in the group life chapter, provides for only these "limitations of liability:"

"(1) The insurer may in any group life insurance contract provide that it is not liable, or is liable only in a reduced amount, for losses resulting:

"(a) From war . . . .

"(b) From aviation under conditions specified in the policy."

statute would not apply because the disability chapters do not forbid an insurer to deny coverage in the event of suicide.

■ The definition of disability insurance is "insurance against bodily injury, disablement or death by accident, against disablement resulting from sickness[.]"[4] The policy provides coverage for "specified loss [life, limb or sight] . . . from bodily injuries caused by accident[.]" Thus, this accident policy is disability insurance within the meaning of RCW 48.11.030. Because the policy also insures "human lives," it can also be considered a life insurance policy under a general application of the definition of life insurance: " 'Life insurance' is insurance on human lives and insurance appertaining thereto or connected therewith."[5]

■ Washington courts have not considered the problem presented here under the current statutory scheme.[6] Other jurisdictions, while noting the overlapping character of the two types of insurance, determine the nature of the insurance by the dominant purpose of the policy as reflected by the risk or contingency insured against:[7]

> The distinguishing feature, generally recognized, between such contracts is the risk primarily insured against . . . . "The distinction is that in a life policy, the death is the contingency primarily insured against, the accident being an incidental matter, whereas in an accident policy, the accident is the thing insured against, death, perhaps, being one of the contingencies upon which benefits are payable."[8]

---

[4]RCW 48.11.030.

[5]RCW 48.11.020. *See generally Perkins v. Associated Indem. Corp.*, 189 Wash. 8, 12, 63 P.2d 499 (1936).

[6]*See Kearns v. Penn Mut. Life Ins. Co.*, 178 Wash. 235, 249, 34 P.2d 888 (1934) (under previous insurance code, a life insurance policy did not lose its character because it contained additional benefits for disability and for death by accident).

[7]*E.g., Insurance Co. of North Am. v. Aufenkamp*, 291 Md. 495, 435 A.2d 774, 780 (1981). *But see Whitfield v. Aetna Life Ins. Co.*, 205 U.S. 489, 27 S. Ct. 578, 51 L. Ed. 895 (1907).

[8]*Culbreth v. Prudence Life Ins. Co.*, 241 S.C. 46, 127 S.E.2d 132, 135-36 (1962) (citation omitted). *See generally* 1A JOHN A. APPLEMAN & JEAN APPLEMAN, IN-

We choose to follow courts that find that if the risk insured against is accidents, the inclusion of accidental death benefits does not make a policy one of life insurance.[9] These courts have been interpreting similar statutory schemes to Washington's.[10]

██ The structure of our insurance code indicates that the Legislature intended to treat life insurance and disability insurance separately. " '[S]tatutes must be read together to determine legislative purpose to achieve a "harmonious total statutory scheme . . . which maintains the integrity of the respective statutes." ' "[11] Under the insurance code, a more specific provision of the code controls over a general.[12] The insurance code includes separate chapters governing disability insurance, group disability, life insurance, and group life.[13] Other sections of the insurance code, such as the "Insurance Contract" chapter, treat life insurance differently from disability insurance.[14]

██ Gomez relies on the language in the life insurance definition: "the transacting of life insurance includes . . . additional benefits in event of death by accident[.]"[15] She notes there were "additional benefits" in the case of death

---

SURANCE LAW AND PRACTICE § 361 (1981); 1 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 1:40 (3d ed. 1995).

[9]*Culbreth*, 127 S.E.2d at 136.

[10]*Gudnason v. Life Ins. Co. of N. Am.*, 231 Va. 197, 343 S.E.2d 54, 58 (1986); *Ayre v. Brown & Root, Inc.*, 678 S.W.2d 564, 565 (Tex. Ct. App. 1984); *Insurance Co. of N. Am. v. Aufenkamp*, 435 A.2d at 779-80; *Baumann v. Preferred Accident Ins. Co.*, 225 N.Y. 480, 122 N.E. 628, 629 (1919).

[11]*City of Ellensburg v. State*, 118 Wn.2d 709, 713, 826 P.2d 1081 (1992) (citation omitted).

[12]RCW 48.01.150. *See Bailey v. Allstate Ins. Co.*, 73 Wn. App. 442, 446, 869 P.2d 1110 (1994).

[13]*See* RCW 48.20; RCW 48.21; RCW 48.23, RCW 48.24.

[14]*E.g.*, RCW 48.18.360. *See also* RCW 48.18.400, .410.

[15]RCW 48.11.020 provides:

" 'Life insurance' defined. 'Life insurance' is insurance on human lives and insurances appertaining thereto or connected therewith. For the purposes of this code the transacting of life insurance includes the granting of annuities and endowment benefits; additional benefits in event of death by accident; additional

in her policy: the principal sum was given for death, while only half that amount was given for loss of a finger. Reading the definition of life insurance as a whole,[16] however, the words "additional benefits" imply that there is already life insurance coverage in the policy. This interpretation is supported by the statute defining the scope of coverage for the disability insurance chapter, RCW 48.20.002, which provides in part:

> Nothing in this chapter shall apply to or affect . . . (3) any blank or group policy of insurance; or (4) life insurance, endowment or annuity contracts, or contracts supplemental thereto which contain only such provisions relating to accident and sickness insurance as (a) *provide additional benefits in case of death or dismemberment or loss of sight by accident,* or as (b) operate to safeguard such contracts against lapse, or to give a special surrender value or special benefit or an annuity in the event that the insured or annuitant shall become totally and permanently disabled, as defined by the contract or supplemental contract.

(Emphasis added.) Under this statute, if there is a life insurance policy that also has additional benefits in the case of death by accident, the provisions governing individual disability insurance do not apply; rather, the life insurance statutes govern. The predicate is that general life insurance is already provided in the policy. In this policy, the only insurance against loss of human life is the loss of life because of accident. As this is not an "additional benefit" to a life insurance policy, the language in RCW 48.11.020 is not applicable.

Finally, the Legislature specifically defined "disability insurance," as "insurance against bodily injury, disablement or death by accident," meaning that coverage for "death by accident" is allowed as disability insurance. Construing disability insurance that includes accidental death coverage as controlled by the disability insurance

---

benefits in event of the total and permanent disability of the insured; and optional modes of settlement of proceeds."

[16]*Cf. Wright v. Engum,* 124 Wn.2d 343, 352, 878 P.2d 1198 (1994).

chapter (unless the benefits are in addition to life insurance benefits) gives full effect to the definition of "disability insurance."

■ In this insurance contract, the bodily injuries resulting in death must be caused by an accident in order to trigger coverage. Nancy Gomez does not dispute that Steven Gomez's death was not an accident. We affirm.

Cox and ELLINGTON, JJ., concur.

Review denied at 132 Wn.2d 1002 (1997).