Lorene G. VARLEY a/k/a Lorene G. Carmody and James Varley & Sons, Inc., Appellants,

v.

GENERAL AMERICAN LIFE INSURANCE COMPANY, Respondent.

No. 46859.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 31, 1984.

William B. Smith, St. Louis, for appellants.

Joseph M. Kortenhof, St. Louis, for respondent.

CRANDALL, Judge.

Appellants, Lorene G. Carmody[1] and James Varley & Sons, Inc., were the beneficiaries of certain insurance policies issued by respondent, General American Life Insurance Company, on the life of James G. Varley, Jr. On August 7, 1977, James G. Varley, Jr., committed suicide. Respondent paid the life insurance benefits of $155,000 to appellants but refused to pay the accidental death benefits. Respondent's defense was that James G. Varley, Jr., was sane at the time that he committed suicide, and that his death was therefore not an accident. Appellants brought suit to recover $50,000 accidental death benefits. A jury returned a verdict in favor of respondent and judgment was entered accordingly. This appeal ensues. We affirm.

Preliminarily it should be noted that in Missouri the taking of one's life while sane is not an accident, while suicide committed while insane is an accident. *Garmon v. General American Life Insurance Co.,* 624 S.W.2d 42, 44 (Mo.App.1981). The issue at trial, therefore, was the late Mr. Varley's sanity at the time of his death. Appellants contend that the trial court erred in not permitting two lay witnesses, Michael Convy and Marilyn Whittle, to express their opinions that the decedent was insane at the time of his death.

In order for a lay witness to testify that a person is insane, the witness must relate facts of his own personal knowledge upon which the opinion is based. When the facts have been stated, unless they are inconsistent with the person's sanity, the opinion of the lay witness is inadmissible. *Lee v. Ullery,* 346 Mo. 236, 140 S.W.2d 5 (1940). If the opinion of the lay witness is not based upon a knowledge of facts inconsistent with sanity, the opinion has no value. *Thompson v. University of Missouri,* 488 S.W.2d 617 (Mo.1973). The facts elicited must go beyond mere "sickness, old age, peculiarities, eccentricities in dress or oddities of habit, forgetfulness, inability to recognize friends, feebleness resulting from illness, and other facts or circumstances not inconsistent with the ability to understand the ordinary affairs of life ..." *Lee v. Ullery,* 140 S.W.2d at 10. Receipt of such opinion evidence rests in the discretion of the trial court, and we will defer to the trial judge except in extreme cases where an improper exercise of discretion appears. *Fields v. Luck,* 335 Mo. 765, 74 S.W.2d 35, 45 (1934).

An analysis of the cases in which lay opinion evidence was permitted, *see e.g., Thompson v. University of Missouri,* 488 S.W.2d at 617; *Barnes v. Marshall,* 467 S.W.2d 70 (Mo.1971), or not permitted, *see e.g., Lewis v. McCullough,* 413 S.W.2d 499 (Mo.1967), indicates that the decision to permit a lay opinion as to insanity is a discretionary decision based upon the facts of

---

1. Mrs. Carmody was the wife of James G. Var- ley, Jr., at the time of his death.

that particular case. The test as to what "facts" are inconsistent with sanity appears to be whether the person alleged to be insane displays psychotic behavior[2] that is easily discernable by a lay person. The test requires behavior that, viewed by objective standards, makes the conclusion of insanity obvious.

In this case each of the witnesses was well acquainted with the decedent. Convy was his second cousin and had known him his entire life. Convy testified that in addition to the blood relationship, the two were close friends. Whittle, who was a next door neighbor, had known the decedent for over three years. Convy testified that in the period preceding the suicide Varley had seemed agitated, that there had been a dramatic change in personality, and that Varley had become consumed with his own problems. Varley had brought his "drinking problem" under control. Varley would insist that he had forgotten how to perform various tasks despite being able to perform them well. He also claimed that something snapped in his brain, when neurological tests revealed no abnormality and he was repeatedly reassured that there was no problem. On the night before the suicide, Convy, Varley and their wives went out to dinner, but Varley would not eat but just stared at his food. Later that evening Convy and Varley argued about Varley's failure to solve his problems. Varley stated: "I can't go on. I can't function any longer. I'm in pain. Something in my brain snapped. I'm going to kill myself." The next day Varley was dead.

Whittle also testified to a marked change in Varley's behavior in the months preceding the suicide. Before 1977 Varley had been vibrant, outgoing, and very attached to his family. After that, however, he became fearful and withdrawn. He didn't hold his children and feared failing as a husband. He stated that "he couldn't live in this world anymore." He thought something was wrong with his brain. Whittle

testified, however, that during the week before the suicide Varley had gone to work for the first time in two months. The day before the suicide he had visited the Whittles and had brought her husband, who enjoyed sweets, some cake. She also stated that Varley seemed distressed during this visit.

While each of the two witnesses had sufficient acquaintance with the decedent, and each had ample opportunity to observe him, the foundation laid by each of the witnesses was insufficient to support a lay opinion that he was insane. *Lewis v. McCullough*, 413 S.W.2d at 504. While the behavior of the decedent was unusual or peculiar, it was not objectively inconsistent with sanity. We therefore hold that the trial court did not abuse its discretion in excluding the opinions of the lay witnesses.

The judgment of the trial court is affirmed.

KAROHL, P.J., and REINHARD, J., concur.

---

2. Plaintiff's expert testified that psychotic depression is marked by a loss of contact with reality and an inability to interpret reasonable facts and arrive at rational conclusions. For our purposes we accept that definition.