Daniel T. CASEY, Plaintiff,

v.

UDDEHOLM CORPORATION, a New York corporation, Uddeholm Health Benefits Plan, and Pacific Mutual Life Insurance Company, Defendants.

No. 92 C 2156.

United States District Court, N.D. Illinois, E.D.

July 21, 1993.

Harold E. Collins, Michael Raymond Collins, John P. Collins, and Ann Marie Higgins, Collins & Collins, Chicago, IL, for plaintiff.

Thomas G. Hancuch, Edward C. Jepson, Jr., Vedder, Price, Kaufman & Kammholz, Chicago, IL, for defendants/cross-claimants.

David M. Simon, Wildman, Harrold, Allen & Dixon, and Louis C. Roberts, and Daniel John McMahon, Peterson & Ross, Chicago, IL, for defendants.

Daniel John McMahon, Peterson & Ross, Chicago, IL, for cross-defendant.

## *MEMORANDUM OPINION*

KOCORAS, District Judge:

This matter comes before the Court on the motion for summary judgment of the defendants, Uddeholm Corporation and Uddeholm Health Benefits Plan. For the following reasons, the motion is granted.

Daniel Casey filed this lawsuit seeking a review of a denial of health benefits. Casey incurred permanent and severe injuries as a result of being struck by a Chicago Transit Authority elevated train ("the CTA train") when he dove in front of it in an attempt to commit suicide. Casey subsequently presented a claim for over $300,000 in hospital bills and doctor's bills to the Administrator of the defendant Plan. The Administrator denied Casey's claim, interpreting the Plan to not provide coverage for injuries sustained as a result of a suicide attempt. After reviewing the Administrator's interpretation, we conclude that in specific circumstances, injuries sustained as a result of a suicide attempt are covered under the Plan.

## I. *The Interpretation of "Injuries Sustained Accidentally"*

Because the Plan does not grant discretion to the Administrator to interpret its terms, we employ a *de novo* standard of review. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Ziaee v. Vest,* 916 F.2d 1204, 1208 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1581, 113 L.Ed.2d 646 (1991); *Petrilli v. Drechsel,* 910 F.2d 1441, 1445–47 (7th Cir.1990). After conducting our *de novo* review, we conclude that we cannot uphold the Administrator's interpretation of the Plan, and instead, we adopt an interpretation that would extend coverage for injuries sustained as a result of a suicide attempted while insane.

The relevant terms of the Plan are briefly stated. The Plan provides basic medical benefits for participants who are "confined in a hospital as a result of a non-occupational illness or injury...." In addition, the Plan's major medical benefits cover medically necessary charges "due to Sickness or Injury...." The definitions section of the Plan defines "injury" as an "Injury to the body that is sustained accidentally." The Plan, however, does not define "accidentally," and although the Plan contains nineteen exclusions, none of them deny coverage for injuries arising from attempted suicide or for injuries intentionally inflicted by the beneficiary.

The Plan Administrator found that the Plan did not cover Casey's claim because his injuries were not sustained accidentally. The Administrator explained his decision in the following manner:

> As I interpret the Plan, injuries that are sustained accidentally are those that are unexpected, unpremeditated, and unforeseen. *See* J. Appleman, *Insurance Law & Practice,* § 360, pp. 447–53 (1981). Thus, the issue is not whether Mr. Casey intended to injure himself. The issue is whether his injuries were the reasonably foreseeable consequence of what he did.
>
> Here ... the injuries suffered by Mr. Casey were the reasonably foreseeable or expected consequence of his jumping in front of a speeding CTA elevated train.

Under these circumstances, his injuries cannot be considered to have been "sustained accidentally" within the meaning of the Plan.

In addition, the Administrator addressed the argument that an act committed without intent is accidental. The Administrator held that "[t]he express language of the Plan limits coverage for medical benefits to those injuries that are 'sustained accidentally.' Nowhere does it define accidental injuries as those that are not intended."

The defendants argue that the Administrator's interpretation is consistent with the plain language of the Plan's medical benefits provisions. According to the defendants, the Plan's provisions do not require a finding that an injury was intentionally self-inflicted *in order to* be excluded from coverage; rather, the injury simply must be found not accidental. The defendants further suggest that the Administrator's interpretation is consistent with the fundamental principle of ERISA that the terms of a plan should be interpreted from the viewpoint of a plan participant of average intelligence and experience. *Senkier v. Hartford Life & Acci. Ins. Co.*, 948 F.2d 1050, 1052–53 (7th Cir.1991).

We do not agree with the defendants that the plain language of the Plan dictates the Administrator's interpretation. The Plan does not define what it means by "accidentally." Nowhere does it state that "accidentally" is not to be equated with "unintended." In addition, the Plan nowhere specifically excludes coverage for injuries sustained as a result of suicide. Thus, the term "accidentally" could be read to incorporate an element of lack of intent without violating the plain language of the Plan.

Beyond this, we find the Administrator's interpretation to be unclear. To the extent the Administrator interpreted the Plan to mean that any objectively foreseeable result of any act, even an act that is unintended, does not qualify as being accidentally caused, we think this interpretation is in error. In the alternative, the Administrator may have meant that Casey's attempted suicide was nonaccidental in the sense that Casey, and no other force, propelled himself into the train. Along these lines, the Administrator may

have been suggesting that it does not matter whether Casey could not resist due to insanity because on one level, Casey acted purposefully, and purposeful action cannot be deemed an accident, nor can its results be deemed unexpected or unforeseen. If this latter interpretation is the interpretation proposed by the Administrator, we admit it has some merit.

The Seventh Circuit, however, has adopted the rule that ambiguous terms in an ERISA plan are to be strictly construed in favor of the insured. *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 311–14 (7th Cir.1992). In light of this principle, we conclude that the Plan's coverage for accidental injuries includes injuries sustained as a result of a suicide attempted while the insured is insane. We are not alone in this conclusion. *Couch on Insurance* unequivocally states that "[t]he death of an insured by suicide while insane and without any intention of taking his own life is by 'accident' or by 'accidental means'...." 10 *Couch on Insurance 2d* § 41:198 (1982). Furthermore, both the United States Supreme Court and the Illinois Supreme Court have indicated that suicide while insane should be regarded as an accident. In *Mutual Life Ins. Co. v. Terry*, 82 U.S. 580, 591, 21 L.Ed. 236 (1873), the United States Supreme Court referred to suicide while insane as "accidental self-destruction." In *Grand Lodge of Illinois, I.O.M.A. v. Wieting*, 168 Ill. 408, 419, 48 N.E. 59 (1897), the Illinois Supreme Court stated that suicide while insane should be "regarded as though it were the result of accident...." *See also, Varley v. General American Life Ins. Co.*, 664 S.W.2d 682, 683 (Mo.Ct.App.1984) (stating that in Missouri the taking of one's life while sane is not an accident, while suicide committed while insane is an accident); *Insurance Co. of North America v. Aufenkamp*, 291 Md. 495, 435 A.2d 774, 779 (1981) (asserting that the generally recognized principle is that the taking of one's own life while insane is an accident within the meaning of that term as used in accident policies).

■ In criminal law, the general principle of the insanity defense is that an actor is excused for conduct constituting an offense if, as a result of a mental disease or defect,

the actor does not perceive the physical nature or consequences of his conduct, does not know his conduct is wrong or criminal, or is not sufficiently able to control his conduct so as to be held accountable for it. 22 C.J.S. *Criminal Law* § 99 (1989). Relying on this criminal law principle and on precedent from civil cases,[1] we determine that Casey may recover under the Plan if he can establish that certain facts existed at the time he jumped in front of the CTA train. Casey may establish either, that he did not know or understand the nature and quality of his actions, that is, that he did not know the moral nature of his act, or Casey may establish that he was overcome by an irresistible impulse that essentially forced him to jump in front of the train against his will.

## II. *Application*

■ Having articulated the appropriate standard to be applied when determining whether injuries sustained as the result of a suicide attempt are classified as accidental, we look to the evidence presented by Casey and determine whether he has met the burden imposed by the standard. Before doing so, however, we emphasize that a mere attempt to commit suicide, without more, does not evidence insanity.

■ We find no error in the Administrator's determination that the evidence presented by Casey failed to establish that he was insane and that his injuries were not sustained accidentally. *See Ziaee*, 916 F.2d at 1208 (suggesting that *de novo* review requires a federal court to uphold the Administrator's decision unless erroneous). In addition, upon independent review, we arrive at the same conclusion.

There is no persuasive evidence in the record that Casey did not understand the nature or consequences of his actions or their moral nature. In fact, Dr. Cavanaugh, the expert retained by the Plan, found that most probably Casey was not "disoriented, deliri-

ous, demonstrating a toxic psychosis secondary to alcohol or drugs, experiencing command hallucinations or other hallucinatory phenomenon, or ... deluded in his thinking."

In order to determine whether Casey acted according to an irresistible impulse, we review, *inter alia*, the opinions of two expert witnesses and other evidence presented by Casey. Having reviewed the evidence, we conclude that Casey did not act as a result of an irresistible impulse.

Casey describes his "bizarre and illogical" behavior in the days preceding his suicide attempt in an effort to persuade the Court that he was insane at the time he dove in front of the CTA train. We are not persuaded. The behavior described in Casey's brief as "bizarre and illogical," while arguably not normal, is too ambiguous to convince us that Casey was insane when he attempted suicide.

The reports and testimony of the expert consultants also fail to convince us that Casey was insane at the time of his suicide attempt. Although both experts consulting on this case agreed that Casey suffered from a mental illness which impaired his judgment, they disagreed as to whether Casey acted according to an irresistible impulse when he jumped. The evidence shows that Casey admitted to his expert witness, Dr. Ostrov, that on the morning of his suicide attempt he "kept thinking and thinking about ending it all" and that he "was afraid to jump in front of a train but the thought of going on living was more terrible so he did jump." Dr. Cavanaugh, the expert for the Plan, concluded that this evidence of Casey's internal struggle suggested that Casey maintained a desire to commit suicide up until the time of the attempt. Cavanaugh pointed out that there existed no evidence in the record reflecting specific mental or physical states that have been found to mitigate responsibility or eliminate impulse control. Rather, Dr. Cavanaugh found that Casey was "a rather classic suicide attempter" who "maintained

---

1. Courts considering insanity in the context of insurance contracts have utilized the standard of insanity established by the Supreme Court in *Mutual Life Ins. Co. v. Terry*, which stated that an individual is relieved of responsibility for a given act if "his reasoning faculties are so far impaired that he is not able to understand the moral character, the general nature, consequences and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse, which he has not the power to resist." 82 U.S. at 591; *see e.g., Reinking v. Philadelphia American Life Ins. Co.*, 910 F.2d 1210, 1216 (4th Cir. 1990) (adopting the *Terry* standard in interpreting a provision of an ERISA plan excluding coverage for intentionally self-inflicted injury).

that level of capacity enabling him to resist the suicide attempt had he chosen to do so."

The report of Dr. Ostrov, on the other hand, summarily concluded that Casey "was in a mental state that did not allow him to think rationally about his future. He was unable to resist the impulse to commit suicide. He was in that sense incapable of forming an intent to injure himself." Dr. Ostrov proffered this conclusion even in light of Casey's statements to him that Casey thought all morning about suicide and was afraid, but that he decided to go ahead and attempt it anyway. We find Dr. Cavanaugh's report the more persuasive in its presentation, conclusion, and relation to the other evidence presented. Hence, we grant summary judgment in favor of the Plan because Casey was not insane at the time he attempted suicide.[2]

---

**2.** Casey also argues that because his injuries were the result of mental illness, they should be covered under the Plan's provision for expenses incurred as the result of illness or sickness. We agree with the Administrator that this provision cannot be interpreted to cover Casey's injuries. The Plan makes a clear distinction between injuries and illness and/or sickness. Casey asks for payment for treatment required when he was struck by a train, not for payment for the treatment of mental illness or substance abuse. Accepting Casey's argument would render meaningless the Plan's limitation for injuries in most suicide cases.