Daniel T. CASEY, Plaintiff–Appellant,

v.

**UDDEHOLM CORPORATION, a New York corporation and Uddeholm Health Benefits Plan, Defendants–Appellees.**

No. 93–2970.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1994.

Decided Aug. 10, 1994.

---

6. It is, of course, dubious in any event whether Rosendo could prevail under *Fleuti* or Fifth Cir- cuit precedent.

Michael R. Collins (argued), Harold E. Collins, Ann M. Morrone (argued), Collins & Associates, Chicago, IL, for plaintiff-appellant Daniel T. Casey.

Thomas G. Hancuch (argued), Edward C. Jepson, Jr., Vedder, Price, Kaufman & Kammholz, Chicago, IL, for defendants-appellees.

Before FAIRCHILD, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Daniel Casey attempted to commit suicide by throwing himself in front of an elevated train in Chicago on March 6, 1991. Casey survived, but he was severely and permanently injured. This case involves Casey's attempt to compel his health insurance carrier to pay his medical expenses.

Uddeholm Health Benefits Plan refused to pay Casey's medical bills because, it claimed, Casey's injuries were not "sustained accidentally" as his policy required. Casey protested, and a hearing on his case was held before the plan's administrator. The administrator found against Casey.

Casey then sued under 29 U.S.C. § 1132(a)(1)(B), which allows a beneficiary to

bring a civil suit in federal district court to "enforce his right under the terms" of an insurance benefits plan. Uddeholm moved for summary judgment. Summary judgment was granted in favor of Uddeholm and against Casey, 828 F.Supp. 566. This appeal by Casey followed.

■ When a district court grants summary judgment in a § 1132(a)(1)(B) action which challenges a denial of benefits based on a plan interpretation, we review that decision *de novo. Halpin v. W.W. Grainger Inc.,* 962 F.2d 685, 688 (7th Cir.1992). Moreover, as in any summary judgment, the moving party must establish in the district court that there is no genuine issue of material fact to be resolved at trial, and that judgment may be entered as a matter of law. If there is any doubt as to whether such an issue of fact exists, the summary judgment motion must fail. *Id.*

## I. *Interpretation of the Plan*

### The Administrator's Interpretation of the Plan's Language

The Uddeholm Health Benefits plan provided medical benefits for non-occupational injury. It defined "injury" as "an injury to the body that is sustained accidentally." It did not define "accidentally." The plan has nineteen exclusions, but it does not explicitly exclude attempted suicide or intentionally inflicted injuries.

The plan administrator concluded that Casey's injuries were not accidental because they were the reasonably foreseeable consequence of his actions. Therefore Casey's claim was not covered. The administrator also rejected the argument that "accidentally" could mean "not intended."

In reaching these conclusions, the administrator relied on *Senkier v. Hartford Life & Accident Ins. Co.,* 948 F.2d 1050, 1052–53 (7th Cir.1991), for the proposition that a plan's terms should be interpreted as they would be by a plan participant of average intelligence and experience. The administrator concluded that an ordinary person employing ordinary usage would not consider an attempted suicide to be an "accident" because an attempted suicide requires purpose-

ful action. Therefore the resulting death or injury would not be considered accidental in ordinary usage.

### The District Court's Review of the Administrator's Interpretation of the Plan's Language

The benefit plan does not grant discretion to the administrator to construe uncertain terms. Thus, the district court was required to conduct a *de novo* review when it examined plaintiff's challenge to the plan administrator's adverse interpretation of the language of the plan. In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court, in reviewing a case which began its appellate journey through a grant of summary judgment, determined that *de novo* review applies when federal courts review actions under § 1132(a)(1)(B). *Id.,* 489 U.S. at 116; 109 S.Ct. at 957.

■ The district court, properly applying a *de novo* standard of review, rejected the administrator's interpretation that no injury resulting from a suicide attempt could be accidental as that term is used in the plan. The court relied on *Phillips v. Lincoln Nat'l Life Ins. Co.,* 978 F.2d 302, 311–14 (7th Cir. 1992), which held that ambiguous terms in an ERISA plan are to be strictly construed in favor of the insured. A term in an insurance policy is ambiguous if there is "genuine (meaning, substantial) uncertainty, not resolvable by other means" in interpreting the term. *Harnischfeger Corp. v. Harbor Ins. Co.,* 927 F.2d 974, 976 (7th Cir.1991). Further, when construing ambiguous terms "the insured's proposed reading must be reasonable." *Id.*

The district court found that the plain language of the Uddeholm plan was ambiguous and did not mandate the result reached by the administrator. Specifically, (1) the word "accidentally" was not defined, (2) it is not explicit that "accidentally" may not be equated with "unintended" and, (3) the plan did not specifically exclude suicide attempts or self-inflicted injuries.

Therefore, following *Phillips,* the court concluded that it was possible under a reasonable reading of the plan to find coverage

for Casey. It did so by citing to several cases, *Mutual Life v. Terry*, 82 U.S. (15 Wall) 580, 591, 21 L.Ed. 236 (1873), *Grand Lodge of Illinois, I.O.M.A. v. Wieting*, 168 Ill. 408, 419, 48 N.E. 59 (1897), *Varley v. General American Life Ins. Co.*, 664 S.W.2d 682, 683 (Mo.Ct.App.1984), *Insurance Co. of North America v. Aufenkamp*, 291 Md. 495, 435 A.2d 774, 779 (1981) and a treatise, 10 *Couch on Insurance 2d* § 41:198 (1982), for the proposition that suicide-while-insane is accidental. The district court also cited to *Reinking v. Philadelphia American Life Ins. Co.*, 910 F.2d 1210, 1214–16 (4th Cir.1990), which examined an insurance plan which specifically excluded coverage for "intentionally self-inflicted injury." *Reinking*, following *Terry*, held that despite this exclusion, a self-inflicted injury was covered by the plan if the person attempting suicide "lacked the capacity for effective choice" or was subject to an "affliction" which gave rise to an "irresistible impulse" to attempt suicide.

Based on this analysis, the district court determined that Casey would prevail if he could show that either (1) "he did not know or understand the nature or quality of his actions," or (2) that "he was overcome by an irresistible impulse that essentially forced him to jump in front of the train against his will." The court employed the language used in the cited cases and characterized such a mental state as "insanity." The district court also emphasized that "a mere attempt to commit suicide, without more, does not evidence insanity."

■ The district court found that the administrator's conclusion, that the language of the policy required it to find that Casey was not covered, was wrong. While "accidentally" may be unambiguous in other contexts, we agree that it is ambiguous here in light of the specific facts of this case. The language of the policy is thus rendered ambiguous, for the reasons that the court noted. Therefore the district court correctly followed the *Phillips* standard and construed the terms of the plan to favor the insured. Favoring the insured, in this case, meant acceptance of Casey's argument that the policy, when referring to coverage of "accidental injuries," did not necessarily preclude coverage where the insured party was injured when attempting suicide.

■ We also note that, contrary to the plan administrator's finding, accidentally is commonly defined as "unexpected or unintentional." Webster's II New Riverside University Dictionary 71 (1984). A self-inflicted injury may be accidental, where accidental is taken to mean unintentional rather than unexpected. For example, it is an accident when someone hits his thumb with a hammer when driving a nail. The injury was self-inflicted, but not intended, hence accidental. In the case of a suicide attempt like Casey's, he claims he lacked intent because he had a mental incapacity which prevents the formation of intent, in which case his self-inflicted injury is an accident.

We agree with the district court's analysis. The language of the policy was, with regard to injury resulting from a suicide attempt, ambiguous. The administrator's conclusion to the contrary was wrong.

Having resolved the interpretation of the language of the plan, what remained to be determined was whether or not Casey's suicide attempt fell into one of the two categories the district court derived from *Terry*.[1] If Casey established either that "he did not know the moral nature of his act" or that "he was overcome by an irresistible impulse" then he was "insane" as that term is defined in *Terry*. If either of the foregoing factors existed, Casey's injury was "accidental" as a matter of law, and he would be covered by the policy. If he failed to establish either of these factors, he would not be covered.

## II. *Determination of the Facts*

### The Administrator's Determination of the Facts and Their Application to the Plan

Because the administrator found, as a matter of legal interpretation, that Casey's injuries resulting from the suicide attempt could

---

1. In light of our analysis below, a partial summary judgment, limited to the interpretation of the plan language, would have been appropriate.

not have been sustained accidentally within the meaning of the language of the plan, he made no factual findings. The administrator dismissed as "not pertinent" Casey's argument that Casey "lacked intent" at the time of the attempted suicide. The plan administrator likewise rejected the argument that Casey was driven by an irresistible insane impulse. Thus, the administrator did not assess whether or not Casey was insane, or lacked intent, within the meaning of *Terry* and its progeny, or *Reinking*.

**The District Court's Review of the Facts and Their Application to the Plan**

 A question which remains unresolved in this circuit is whether the *de novo* standard of review, mandated by the Supreme Court in *Firestone,* applies to factual determinations of an administrator as well as that administrator's plan interpretations. In *Petrilli v. Drechsel,* 910 F.2d 1441, 1446 (7th Cir.1990), we stated in *dicta* that the holding of the Supreme Court in *Firestone* "strongly suggests" that it intended the *de novo* standard of review to be mandatory regardless of whether the denial of benefits under review involved plan interpretation or fact determination.

Relying on our comments in *Petrilli,* the Third Circuit has explicitly held that *Firestone* requires factual determinations of a plan administrator to be reviewed under a *de novo* standard. *Luby v. Teamsters Health, Welfare and Pension Trust Funds,* 944 F.2d 1176, 1183 (3d Cir.1991). The *Luby* court went on to hold that a plan administrator's factual determinations are to be accorded no deference in the *de novo* review. *Id.* at 1184. There is, however, a split in the circuits on the fundamental question of the appropriate standard of review for factual determinations. Contrary to *Luby,* for example, the Fifth Circuit in *Pierre v. Connecticut General Life Ins. Co.,* 932 F.2d 1552, 1557–59 (5th Cir.1991), provided that such a review should be made under a deferential standard.

The ancillary question of the scope of review under a *de novo* standard has also produced a circuit split. In *Luby,* the court held that district courts were free to limit their *de novo* review to the record before the plan administrator or they could permit further information or evidence to be submitted to enable a full exercise of *informed and independent judgment.* *Luby,* 944 F.2d at 1184–85. Proceeding to the opposite conclusion, the Sixth Circuit in *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979 (6th Cir.1991), has held that a *de novo* standard does not permit consideration of evidence not presented to the plan administrator. In a somewhat more middle ground position, the Eighth Circuit in *Donatelli v. Home Ins. Co.,* 992 F.2d 763, 765 (8th Cir.1993), has held that upon good cause shown the *de novo* standard of review allows the introduction of evidence not presented to the administrator. Similarly, the Fourth Circuit in *Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1025 (4th Cir.1993), has indicated that a *de novo* standard allows examination of evidence not before the administrator where necessary for adequate review by the district court.

The foregoing discussion concerning the standard of review and scope is based on the proposition that there are factual findings made by a plan administrator which are available for review by a district court. That is not the case before us.

As we stated earlier, the administrator made no findings resolving the factual dispute concerning Casey's mental state. Thus, with no administrator's factual findings, there can be no deferential review. Any review of the facts by the district court in this case necessarily must be *de novo*—and any resolution of contested material facts must be through a fact-finding proceeding. Thus, the district judge in a bench trial of this case would have been free to review the evidence *de novo,* and weigh the facts, resolving any contradictions.

But the matter before the district court was not a trial to the bench but rather the disposition of a summary judgment motion. It is axiomatic that when there are contested issues of material fact, the district court is precluded from granting summary judgment. FED.R.CIV.P. 56(c). Where the plan administrator has left contested issues of fact unresolved, the district court's review under Rule 56(c) should have been limited to determining whether any of the facts in dispute were material.

Instead, the district court embarked upon "an independent review" of all the facts before the administrator.[2] In support of its conclusion that Casey was not insane, the court analyzed and weighed the conflicting evidence concerning Casey's mental state at the time he jumped in front of the train. The court concluded that "[w]e find Dr. Cavanaugh's report the more persuasive in its presentation, conclusion, and relation to the other evidence presented. Hence, we grant summary judgment in favor of the Plan because Casey was not insane at the time he attempted suicide."[3]

▮ This language leaves no question that the district court improperly weighed the evidence in this case in arriving at its decision to grant summary judgment. This is not entirely surprising, however, because the court assumed that it was required to review the facts *de novo*. Given the lack of factual determination by the administrator, the district court applied the right standard of review—but in the wrong proceeding. Where the administrator has made no factual determination in denying plan benefits the district court should apply a *de novo* standard of review and arrive at its own factual findings in determining whether benefits were properly denied. However, the appropriate proceedings for such fact-finding is a bench trial and not the disposition of a summary judgment motion.[4]

In *Quisenberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1025 (4th Cir.1993) the Sixth Circuit held that a district court may review evidence beyond that which was before the plan administrator only when circumstances clearly establish that additional evidence is necessary, but that as a general matter the district court should restrict itself to the evidence before the plan administrator. In this case the record before the plan administrator was relatively undeveloped. Therefore, in its *de novo* review the district court may limit the evidence to the record before the plan administrator, or it may permit the introduction of additional evidence necessary to enable it to make an informed and independent judgment.

## III. *Conclusion*

The district court's decision, rejecting the administrator's interpretation of the language of the plan and "adopt[ing] an interpretation that would extend coverage for injury sustained as a result of a suicide attempted while insane" is correct. However, there remains a genuine issue of material fact concerning Casey's mental state at the time he was injured and it was error for the district court to resolve that factual dispute through summary judgment.

Therefore, the summary judgment in favor of Uddeholm Corporation and Uddeholm

---

2. The district court's independent review of the facts was preceded by the mistaken conclusion that the administrator had actually resolved the contested issues of fact and made a determination that "Casey failed to establish that he was insane." The court said it found "no error in the Administrator's determination," and upon the conclusion of its independent review, stated that "we arrive at the same conclusion" as the administrator.

3. The decisive issue in this case was Casey's mental state at the time of his suicide attempt. There is evidence in the record that Casey had severe mental and emotional problems in the period leading up to the attempt but it is unclear what Casey's state of mind was at the time he sustained the injury. The experts, Dr. Cavanaugh and Dr. Ostrove, disagree as to whether Casey was able to form the intent to commit suicide and whether he was driven by an irresistible impulse. These unresolved factual issues are unquestionably outcome determinative and material.

4. The district court is not required to remand the case to the administrator. Under our pre-*Firestone* cases, *Wardle v. Central States,* 627 F.2d 820, 824 (7th Cir.1980), and *Wolfe v. J.C. Penney Co., Inc.,* 710 F.2d 388, 394 (7th Cir.1983), the district court may have been required to remand the matter to the plan administrator if new facts had to be considered. However, since *Firestone* we no longer apply a deferential standard when reviewing the administrator's findings but review them *de novo*. Therefore, the district court need not limit the evidence which the district court may consider to that which was before the plan administrator. This is the emerging rule in several other circuits, *Luby,* 944 F.2d at 1184; *Heasley v. Belden & Blake Corp.,* 2 F.3d 1249, 1262, n. 14 (3d Cir.1993); *Donatelli v. Home Ins. Co.,* 992 F.2d 763, 765 (8th Cir.1993); *Quesinberry v. Life Ins. Co. of North Amer.,* 987 F.2d 1017, 1021–27 (4th Cir.1993) (en banc); *Moon v. American Home Assurance Co.,* 888 F.2d 86, 89 (11th Cir. 1989), and we apply it here.

Health Benefits Plan and against Daniel T. Casey is VACATED. This case is REMANDED to the district court for trial consistent with this opinion.

MANION, Circuit Judge, dissenting.

Daniel Casey jumped in front of a train for the purpose of committing suicide. His attempt failed. He lived. but with major injuries. Casey then attempted to collect under his company's insurance plan, which allowed recovery for injuries "sustained accidentally." The district court did not allow recovery. This court has reversed and remanded for an evidentiary hearing to consider Casey's state of mind when he jumped. I do not think that is necessary.

Casey concedes in his brief that he "threw himself" onto the tracks in an "attempted suicide." I think those characterizations resolve the coverage question. Casey does not allege that he wandered onto the tracks in some trance-like state brought about by mental infirmity. If he alleged that, we might be permitted to consider his injuries accidental. The reasonable presumption is that Casey waited for the train and jumped at the exact moment the train passed. A suicide attempt is a deliberate act. *See Black's Law Dictionary, Special Deluxe Fifth Edition,* 1286 (1979) (suicide is "the deliberate termination of one's existence"). An accident, on the other hand, is always a chance event. *Id.* at 14. By definition, if an event is deliberate—like a suicide attempt—it can not be considered an accident. There is no need for an evidentiary hearing to consider whether Casey was insane. By conceding that he "threw himself" onto the tracks in an "attempted suicide" he admits that he acted deliberately.

Federal courts are in the process of developing federal common law rules of contract interpretation for ERISA cases. *Senkier v. Hartford Life & Acc. Ins. Co.,* 948 F.2d 1050, 1051 (7th Cir.1991). The consensus which has emerged is that we interpret words in an ERISA policy in an ordinary and popular sense as would a person of average intelligence and experience. *Meredith v. Allsteel, Inc.,* 11 F.3d 1354, 1358 (7th Cir.1993). This rule, borrowed from state contract law,

makes our task in this case routine: we simply ask whether a suicide attempt can be considered accidental, as the average person understands that word. Unlike the court, I find no ambiguity in the word accidental—it is a term of familiar meaning. "When a man has died in such a way that his death is spoken of as an accident, he has died because of an accident, and hence by accidental means." *Wickman v. Northwestern Nat. Ins. Co.,* 908 F.2d 1077, 1086 (1st Cir.1990) (quoting Justice Cardozo's dissent in *Landress v. Phoenix Mutual Life Ins. Co.,* 291 U.S. 491, 499, 54 S.Ct. 461, 464, 78 L.Ed. 934 (1934)). I do not believe the average person speaks of attempted suicide as an accident.

If Casey truly attempted suicide, then he expected to die. "If he actually expected the result, even if he did not specifically intend it, then his actual expectations make his death not accidental." *Wickman,* 908 F.2d at 1089. That he did not die may have been fortuitous, but it is no reason to cast his attempt as an accident. Nor is there a reason for an evidentiary hearing to assess Casey's sanity. Even if his intent was informed by insanity, rather than clear reason, he expected to die when he deliberately jumped in front of the train. Therefore, the injuries that resulted from his unsuccessful attempt were not accidental. I would affirm the district court on the ground that a suicide attempt cannot be considered accidental. Daniel Casey's insanity might mitigate his moral responsibility for his actions, but it certainly does not shift financial responsibility to a monolithic insurer which only agreed to cover injuries "sustained accidentally".