Rodney D. **FRITTS**, Plaintiff,

v.

**PURINA MILLS, INC.,** Defendant.

Civ. A. No. 94–0065–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

April 26, 1995.

Daniel Schorsch, Poindexter, Schorsch & Patterson, Waynesboro, VA, for plaintiff.

Joseph Robert Brame, III, McGuire, Woods & Battle, Richmond, VA, Robert Craig Wood, McGuire, Woods, Battle & Boothe, Charlottesville, VA, for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This case, involving a claim for long-term disability benefits provided under an employee benefit plan, arises under section 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a) (1985), which grants a participant or beneficiary of an employee benefit plan the right to bring a civil action to recover benefits under the terms of the plan. The court referred the case to the Honorable B. Waugh Crigler, Magistrate Judge, for proposed findings of fact and a recommended disposition, pursuant to a standing order. The Magistrate Judge entered his Report on March 20, 1995, recommending that the Plaintiff's motion for summary judgment be granted and that the Defendant be ordered to pay the Plaintiff long-term disability benefits. The Defendant filed timely Objections to the Report, and therefore this court is required to conduct a de novo review. After de novo review of the record in the case, the court declines to follow the Magistrate's Report and will allow the parties the opportunity to present additional evidence relevant to the plan administrator's benefits determination, for the reasons stated herein.

I.

The Plaintiff suffered a back injury in a cramped van ride in November of 1989, while employed by the Defendant. The Defendant started paying him short-term disability payments on May 2, 1990. After twenty-four days the short-term disability payments ran out under the Plaintiff's plan, on October 28, 1991, whereafter the Defendant determined to make no further payments to the Plaintiff. The Defendant concluded that the Plaintiff was not disabled within the meaning of his long-term disability plan, which defines disability as the inability "to perform any and every duty of any gainful occupation for which [one] is qualified or may reasonably be qualified by training, education or experience." (D.'s Ex. 1 (Disability Plan at 3).) The Plaintiff appealed this decision pursuant to the procedures in the plan and submitted himself to an independent medical evaluation with a licensed practitioner jointly selected by the Plaintiff and the Defendant. (See D.'s Ex. 1 (Disability Plan at 10 (review procedures)).) The plan provides that in the event of a disagreement between the association and the covered employee over disability cov-

erage, the decision of a jointly selected medical practitioner is binding on the parties. (*Id.*)

Dr. Douglas Wayne conducted the evaluation and concluded that the Plaintiff has "abnormalities of significant degenerative disc changes at L4/5 and L5/S1 and to a lesser degree [at] L3/4 with bulging discs [at] L1 and L2 as well." The doctor also found evidence of "joint arthropathy at L5/S1" and "evidence of mild spinal stenosis. . . ." An MRI showed "an annular bulge of the C5/C6 discs resulting in mild compression of the anterior spinal cord" and "evidence of a bulging disc as well at T7/8." (D.'s Ex. 2.) Based on his examination, Dr. Wayne concluded that the Plaintiff "would be employable in a position that would restrict him from lifting more than 20 lbs. and would be avoiding [sic] any bending or twisting activities. He would need a job in which he has [sic] the flexibility of changing [sic] from standing to sitting frequently and allow [sic] him to do walking [sic] which seems to help decrease his discomfort." The doctor further determined that the Plaintiff "probably could be employable with the right restrictions." The doctor qualified his opinion regarding the Plaintiff's job prospects, however, by adding as a final observation that the Plaintiff "may need to have the availability of a cot or a bed to lie down during his rest breaks or lunch hours from work, or have an occupation that was [sic] somewhat close to his home to allow him to do this, especially early in his reactivation or re-employment. Obviously, with these restrictions it would be extremely difficult to have Mr. Fritts returned to gainful employment and in order to do so he would most likely need extensive help from a vocational rehabilitation counselor." (D.'s Ex. 2.)

On the basis of Dr. Wayne's report, the Defendant denied the Plaintiff's long-term benefits on March 29, 1994. The plan administrator cited Dr. Wayne's comment that "Mr. Fritts would be employable in a position that would restrict him from lifting more than 20 lbs. and would be avoiding [sic] any bending or twisting activities," as support for the determination not to reconsider the administrator's initial decision to terminate the Plaintiff's disability payments. (D.'s Ex. 3 (denial letter).)

Shortly after receiving notice of the final benefits decision, the Plaintiff sought the opinions of two vocational experts, Andrew V. Beale of Virginia Commonwealth University, and Barry S. Hensley of Educational Services Institute. Mr. Beale stated that "[j]obs are configured to meet work demands and not to meet specific needs of individual workers. The necessity of having a cot or bed available at rest breaks or during lunch hours is an unreasonable expectation and merely serves to bolster my opinion that [Plaintiff] presently is disabled from all work." (D.'s Ex. 4.) Mr. Hensley concluded that "the restrictions that Dr. Wayne places on Mr. Fritts would prevent him from participation [sic] in any competitive gainful activity. The need to have available a cot or a bed to lie down on during rest periods or lunch hours places a very severe vocational restriction on this gentleman. In my opinion, employers are not going to offer this to Mr. Fritts and such a need would preclude competitive employment opportunities." (P.'s Ex. B.) The plan administrator did not consider this evidence in rendering a decision, since the plan only provides for review by a jointly selected doctor, and there is no evidence that the Plaintiff requested the administrator to reconsider the benefits decision in light of these expert opinions.

Arguing that the Defendant failed to view Dr. Wayne's report in its entirety and arbitrarily denied the Plaintiff long-term disability benefits, the Plaintiff brought an action for relief in state court. Since the case arises under ERISA, the Defendant removed the case to this court. Though the Plaintiff argues here that the court should not consider evidence outside the administrative record, he nevertheless points to the vocational reports as proof of the arbitrariness of the Defendant's decision. Though the Defendant argued to the Magistrate that review should be according to an abuse of discretion standard, in its Objections the Defendant now argues that the court should conduct a de novo review and open up the record to consider evidence that the Plaintiff is currently engaged in various employment activities,

which evidence allegedly supports the Defendant's determination that the Plaintiff is not totally disabled. The Magistrate considered opening the record but declined to do so on the grounds that Dr. Wayne's report is binding, unambiguous, and favors the Plaintiff.

## II.

### A.

■ The court must first consider the appropriate standard of review. In their arguments to the Magistrate, both parties agreed that the court should review based on an arbitrary and capricious standard. This is clearly wrong. As the Supreme Court held in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), a denial of benefits challenged under the provisions of ERISA "is to be reviewed under a de novo standard unless the benefits plan gives the administrator ... authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956. The Fourth Circuit has interpreted *Bruch* to mean that "[t]he threshold question for reviewing courts is now whether the particular plan at issue vests in its administrators discretion either to settle disputed eligibility questions or to construe 'doubtful' provisions of the plan itself." *de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1186 (4th Cir.1989). If such authority is granted, then the court is to review under an abuse of discretion standard, to insure that the administrator's decision is "reasonable." *Bruch,* 489 U.S. at 111, 109 S.Ct. at 954. Decisions applying *Bruch* have determined that if a plan does not provide the plan administrator with discretion then the court must review factual questions and legal questions alike de novo. *See, e.g., Glocker v. W.R. Grace & Co.,* 974 F.2d 540, 543 (4th Cir.1992); *Quesinberry v. Life Insurance Co. of North America,* 987 F.2d 1017, 1021–22 (4th Cir.1993).

■ The plan at issue here was promulgated in 1986, before the *Bruch* decision, and does not contain the standard post-*Bruch* clause granting the plan administrator discretion to make eligibility determinations. The plan sets out the eligibility requirements and standards, but there is no language in the plan giving the administrator discretion to apply the provisions of the plan or to determine eligibility. The plan provides that, in the case of a disagreement over coverage, the decision of a jointly selected medical practitioner "shall be binding" upon the parties. (D.'s Ex. 1 (Disability Plan at 10 (review procedures)).) There is no discretion granted to the administrator. Accordingly, review must be de novo. *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956.

### B.

■ Having established that de novo review is required, the court must determine what evidence should be considered. In most circumstances the court's de novo review is limited to the evidence presented to the administrator to support a disability determination under the terms of a plan. *Quesinberry,* 987 F.2d at 1026–27; *see also Davidson v. Prudential Insurance Co.,* 953 F.2d 1093 (8th Cir.1992). The court, exercising its sound discretion, should go beyond the evidence considered by a plan administrator, however, if the court determines that adequate review of the plan administrator's decision requires the court to consider further evidence. *Quesinberry,* 987 F.2d at 1026–27. The Fourth Circuit adopted this "limited discretionary approach," *id.* at 1025, partly due to the fact that, while some ERISA records are lengthy and provide ample evidence to review, other ERISA records are meager and do not provide the requisite evidence upon which a court can base a meaningful de novo review of a plan administrator's decision, *id.* Other circumstances that may be relevant to this case that justify the admission of additional evidence include the following: claims that require consideration of complex medical questions or issues regarding the credibility of medical experts, especially where administrative procedures did not provide for the admission of such evidence; and other circumstances in which there is additional relevant evidence that the claimant could not have presented in the administrative process, including circumstances where administrative procedures precluded a claimant from submitting the evidence. *Id.* at 1027.

The court should open up the record where additional evidence is "necessary for resolution of the benefit claim," *id.* at 1026–27, to insure that ERISA's primary purpose of protecting employees and their beneficiaries is upheld, *id* at 1025. The court must exercise "significant restraint[ ]," *id.,* in exercising this discretion, however, to avoid thwarting "the goal of providing prompt resolution of claims" and to avoid becoming a "substitute plan administrator[ ]," *id.* (citing *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003, 1007 (4th Cir.1985)). When the court opens up the record where a plan limits the evidence to be considered by the plan administrator, the court undermines the terms of the plan and the role of the plan trustee. *See Berry,* 761 F.2d at 1007; *see also Quesinberry,* 987 F.2d at 1036–37 (Niemeyer, J., dissenting). The court must consider the dual concerns of protecting claimants and enforcing contractual procedures sanctioned by ERISA, and attempt to balance them on a case by case basis. *Quesinberry,* 987 F.2d at 1026–27. The court should only admit additional evidence where the circumstances "clearly establish that additional evidence is necessary to conduct an adequate de novo review. . . ." *Id.* at 1025.

When the court grants a claimant permission to supplement the administrative record, or the court decides on its own that additional evidence is required, out of fairness to the plan administrator the administrator should be permitted to submit additional evidence to support the decision. Determining the type of evidence that must be considered and the amount of evidence necessary for adequate review is within the court's sound discretion. *Id.* at 1027.

## C.

In determining whether to admit evidence outside the administrative record in this case, the court will consider the scope of the record before the administrator and the nature of the evidence upon which the administrator based the benefits decision, as well as the terms of the disability plan. The court must analyze the language in the benefits plan defining long-term disability, to determine whether the doctor's report is adequate evidence upon which the court can determine whether the Plaintiff falls within the plan's definition.

As the Defendant argues, the plan's definition of disability is very strict. The Plaintiff must be suffering from "a complete inability . . . to perform any and every duty of any gainful occupation for which he is qualified or reasonably may become qualified by training, education or experience." (D.'s Ex. 1 (Disability Plan at 3.) While the doctor's report initially concludes that "Mr. Fritts would be employable in a position that would restrict him from lifting more than 20 lbs. and would be avoiding [sic] any bending or twisting activities," the report goes on to state that the Plaintiff "may" need to have a cot or bed around or have an occupation close enough to home to return there to rest during breaks, and that, given these restrictions, "it would be extremely difficult to have Mr. Fritts return to gainful employment and in order to do so he would most likely need extensive help from a vocational rehabilitation counselor." (D.'s Ex. 2.) While the plan administrator focused on the first part of the opinion, which states that the Plaintiff is employable, the Magistrate agreed with the Plaintiff that the second part is dispositive, which states that it would be "extremely difficult" for the Plaintiff to return to work.

Recognizing that the plan defines long-term disability narrowly, the court still cannot agree with the administrator that the doctor's report alone justifies the administrator's decision not to grant the Plaintiff long-term benefits. While it may be true that the Plaintiff can perform some job-related tasks, as appears evident from the doctor's report, that is not the inquiry under the disability plan. As the court interprets the plan, the plan does not provide that the Plaintiff must only be able to do certain tasks that are isolated components of a gainful occupation to be considered employable. Rather, the Plaintiff must be capable of becoming gainfully employed. The Plaintiff must either be "qualified" for a "gainful occupation" or reasonably capable of becoming so qualified with further training, education or experience. This interpretation is consistent with the purpose of the plan, the plan language, and

the court's duty to construe ambiguities in benefits plans in favor of beneficiaries. *See Glocker,* 974 F.2d at 544 (ambiguity in benefits plan should be construed against the drafter).

At the same time, however, the doctor's report does not establish that the Plaintiff is disabled within the meaning of the plan, since the doctor stated that the Plaintiff would be employable with the right restrictions. The doctor's report is ambiguous. Most importantly, the report does not provide any analysis on the question of whether there are jobs for which the Plaintiff is qualified, given his limitations, and whether he reasonably could become qualified for a gainful occupation by further training, education or experience. This partly stems from the fact that a medical doctor is required, under the plan, to give a binding opinion on a question that is more appropriately answered by a vocational expert after reviewing a doctor's report.

 Where there exist disputed issues of material fact under a benefits plan, as is the case here, the court cannot resolve such factual disputes on cross-motions for summary judgment. *Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1099 (7th Cir.1994). The proper procedure under Rule 56(c) is to deny the motions and to conduct a de novo review of the evidence at a bench trial. *Id.* Under the limited discretionary approach adopted in *Quesinberry,* the court can limit the evidence that will be considered to that presented to the administrator or determine what further evidence needs to be presented for adequate de novo review. 987 F.2d at 1025; *see also Casey,* 32 F.3d at 1099.

Considering the doctor's report in light of the disability standard contained in the disability plan, it is clear that the court must take further evidence to determine whether the Plaintiff should be awarded benefits. The report provides a detailed examination of the Plaintiff's physical condition but does not analyze adequately whether the Plaintiff can be gainfully employed. The court will conduct a bench trial to resolve the question, where the parties will be entitled to present evidence supporting their arguments. One of the witnesses the court will require the parties to present will be Dr. Wayne. Each of the parties will be entitled to present three witnesses in addition to Dr. Wayne to address the question of whether, given the physical condition of the Plaintiff as outlined by Dr. Wayne, the Plaintiff can be gainfully employed in his current condition or is reasonably capable of becoming gainfully employed by further training, education or experience.

### III.

In summary, the court denies both parties' motions for summary judgment. The court will conduct a bench trial at a date to be determined by the court, to determine de novo whether the Plaintiff is disabled within the meaning of the long-term disability provisions in his disability plan. An appropriate Order will this day issue.